JULIA TUDOR, Indiv. and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. JEWEL FOOD STORES, INC., f/k/a Jewel Companies, Inc., Defendant-Appellee.

First District (1st Division)    No. 1—95—1335

Opinion filed April 28, 1997.

Reinstein & Sherman, of Northbrook (Philip T. Reinstein, of counsel), and Steve Ackerman, of Chicago, for appellant.

Baker & McKenzie, of Chicago (Michael A. Pollard, Barrie L. Brejcha, and Brent A. Hannafan, of counsel), for appellee.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Julia Tudor, filed a three-count second amended complaint against defendant, Jewel Food Stores, Inc., alleging that defendant had improperly charged her for several grocery items over a four-day period in 1993 because electronically scanned prices differed from the advertised or shelf prices for those items. In count I, plaintiff pleaded that defendant's conduct violated section 2 of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 (West 1992)). In count II, plaintiff pleaded a violation of sections 2—714 and 2—715 of the Uniform Commercial Code (810 ILCS 5/2—714, 2—715 (West 1992)). In count III, plaintiff alleged a theory of unjust enrichment. The trial court granted defendant's section 2—615 motion to dismiss all three counts. 735 ILCS 5/2—615 (West 1992). Plaintiff appeals. We affirm.

In ruling on a section 2—615 motion to dismiss, the court must accept as true all well-pleaded facts and all reasonable inferences that can be drawn therefrom. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 8-9 (1992). The court should not dismiss a complaint under section 2—615 unless it clearly appears no set of facts could be proved under the pleadings that would entitle the pleader to relief. *Johnson v. George J. Ball, Inc.*, 248 Ill. App. 3d 859, 863 (1993). In making such a determination, the court is to interpret the allegations of the complaint in the light most favorable to plaintiff. *Kolegas*, 154 Ill. 2d at 9.

In order to state a cause of action under section 2 of the Consumer Fraud Act, plaintiff must allege facts establishing (1) a deceptive act or unfair practice; (2) an intent by defendant that plaintiff rely on the deception; and (3) the deception occurred during trade or commerce. *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 312 (1996). Neither party disputes that defendant's actions occurred during trade or commerce, so we focus

our analysis on whether defendant's acts were deceptive and/or unfair, and whether defendant intended for plaintiff to rely on any deception.

■ Plaintiff pleaded in count I of her second amended complaint that it is deceptive and unfair for defendant to charge an electronically scanned price higher than the price offered in the newspaper and on the shelf. However, plaintiff also pleaded that defendant's internal audits show its electronic scanners were accurate 96% of the time from 1991 through 1993, which exceeds the 75% to 92% accuracy rate indicative of a "serious violation" according to the Law and Regulations Committee of the National Conference of Weights and Measures. Further, plaintiff pleaded that defendant provided her with a receipt enabling her to determine whether the scanned prices accurately reflected the advertised and shelf prices. Plaintiff also pleaded that defendant has a policy providing "[i]f the scanned price on any unmarked item is different from the price on the shelf, you will get the item free." The combination of the high accuracy rate of the scanners, along with the issuance of a receipt and defendant's policy of providing a money-back guarantee if the scanned price differs from the shelf price, indicates there was no deception by defendant.

Nor is defendant's conduct "unfair" under the Consumer Fraud Act. To be unfair under the Act, defendant's conduct must violate public policy, be so oppressive that the consumer has little alternative but to submit, and substantially injure the consumer. *Saunders*, 278 Ill. App. 3d at 313. Plaintiff contends overcharges resulting from a mistake of fact are against public policy and that the overcharges are "statistically significant" and therefore substantially injurious. However, even assuming plaintiff's arguments are correct, she has not adequately pleaded that she had no alternative but to pay the incorrectly scanned prices. In fact, as discussed above, plaintiff pleaded that defendant issues a receipt, enabling her to check whether she has been correctly charged, and offers a money-back guarantee if the scanned price differs from the shelf price. Thus, we find an absence of the oppressiveness and lack of meaningful choice necessary to establish unfairness.

Accordingly, we find plaintiff has failed to adequately plead the first prong of a Consumer Fraud Act violation, that defendant's acts were deceptive or unfair.

Further, the combination of the issuance of the receipt, along with the money-back guarantee if the scanned price differs from the shelf price, indicates defendant did not intend that plaintiff rely on an incorrectly scanned price. Thus, plaintiff has also failed to

adequately plead the second prong of a Consumer Fraud Act violation, that defendant intend that plaintiff rely on its deceptive act or unfair practice. Accordingly, count I of plaintiff's second amended complaint failed to state a cause of action under section 2 of the Consumer Fraud Act.

*Federal Trade Comm'n v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994), cited by plaintiff, is inapposite. There, the court found the defendant's representation that its product was effective in arresting hair loss and stimulating hair regrowth in baldness sufferers constituted a false advertisement under the Federal Trade Commission Act. The court also held the existence of a money-back guarantee was insufficient to preclude a monetary remedy. *Pantron*, 33 F.3d at 1103.

Contrary to *Pantron*, plaintiff here does not argue that the products she bought from defendant did not work as advertised. Rather, she claims defendant overcharged her for those products by the use of its electronic scanners and defendant intended that she rely on the scanned prices to accurately reflect the advertised and shelf prices. Further, this case does not turn solely on the money-back guarantee for improperly scanned prices. Instead, the case turns on whether the 96% accuracy rate of the scanners, in conjunction with the receipt and the money-back guarantee, shows a violation of the Consumer Fraud Act. Thus, *Pantron* is factually different from this case and does not compel a different result.

The present case is also dissimilar to two other cases cited by plaintiff, *People ex rel. Hartigan v. Stianos*, 131 Ill. App. 3d 575 (1985), and *People ex rel. Hartigan v. Knecht Services, Inc.*, 216 Ill. App. 3d 843 (1991). In *Stianos*, plaintiff appealed the trial court's order denying his motion for issuance of a preliminary injunction against defendants, retailers who overcharged for sales tax on each purchase. The appellate court reversed and remanded, finding defendants' conduct deceptive and unfair under the Consumer Fraud Act. In *Knecht*, the appellate court affirmed the trial court's judgment against defendants, finding that defendants' practice of advertising their home repair services at a "minimum charge," when they actually charged exorbitant prices, was deceptive under the Consumer Fraud Act. Neither *Stianos* nor *Knecht* involved a case like the present one, where defendant charged consumers the correct price 96% of the time and offered customers a money-back guarantee in those instances where they were overcharged. Thus, *Stianos* and *Knecht* are not helpful to plaintiff.

■ Plaintiff makes several more arguments in support of her contention that she pleaded a cause of action under the Consumer

Fraud Act despite the 96% accuracy rate of defendant's scanners, defendant's issuance of a receipt, and the money-back guarantee offered by defendant. First, plaintiff contends defendant's 96% accuracy rate should not be considered when determining whether she stated a cause of action under the Consumer Fraud Act, because section 10a of the Act, in effect at the time she filed her complaint, stated "[p]roof of a public injury, a *pattern,* or an effect on consumers generally shall not be required." (Emphasis added.) 815 ILCS 505/10a (West 1992) (now, as amended, 815 ILCS 505/10a (West Supp. 1995)). However, notwithstanding section 10a of the Consumer Fraud Act then in effect, plaintiff pleaded in her second amended complaint that defendant is engaged in a "statistically significant pattern of mischarges," and she also pleaded that the 96% scanning accuracy rate by defendant shows such a "significant pattern." Having pleaded a pattern of misconduct by defendant, plaintiff cannot now argue that those allegations should not be considered.

Plaintiff contends, though, that the prior version of her complaint did not contain allegations of defendant's 96% scanning accuracy rate, and she included those allegations in her second amended complaint in response to comments by the trial judge. In effect, plaintiff asks us to consider only the allegations of her prior complaint. However, where, as here, an amended complaint is complete in itself and does not adopt a prior pleading, the prior pleading is considered abandoned and withdrawn. *Tabora v. Gottlieb Memorial Hospital,* 279 Ill. App. 3d 108, 113 (1996).

Second, plaintiff argues the second amended complaint should not be dismissed until the completion of full discovery, which might show defendant's electronic scanning accuracy rate is lower than 96% or that defendant has otherwise failed to comply with industry standards regarding electronic scanners. In support, plaintiff cites *Yuretich v. Sole,* 259 Ill. App. 3d 311 (1994), which held "a trial court should not refuse a discovery request and grant a motion to dismiss where it reasonably appears discovery might assist the party resisting the motion." *Yuretich,* 259 Ill. App. 3d at 317. However, we must reject plaintiff's argument since further discovery would not change the fact that defendant provided plaintiff with a receipt and money-back guarantee for incorrectly scanned prices and thereby showed it did not intend that she rely on any deception.

Third, plaintiff argues defendant's money-back guarantee improperly displaces the exclusive remedy provided by the Consumer Fraud Act with an "alternative remedy" that is not effective or known by most consumers. However, that argument is not relevant here. This appeal concerns whether plaintiff has stated a cause of ac-

tion under the Consumer Fraud Act. The money-back guarantee offered by defendant simply is one factor showing that defendant did not defraud plaintiff or intend that plaintiff rely on any deception.

Fourth, plaintiff contends even if the money-back guarantee is a remedy that can properly coexist with the remedies provided in the Consumer Fraud Act, she "may adopt all or select any one [remedy] which [s]he thinks best suited to the end sought." *Fleming v. Dillon*, 370 Ill. 325, 331 (1938). Plaintiff is apparently arguing that the money-back guarantee does not prevent her from choosing to disregard that guarantee and instead bring suit against defendant. Even assuming plaintiff's argument is correct, the money-back guarantee still is a factor showing that defendant did not defraud plaintiff or intend that plaintiff rely on any deceptive practices.

Fifth, plaintiff argues defendant acted unfairly under the Consumer Fraud Act because the actual selling price of a jar of peanut butter was not marked on the shelf in one of defendant's stores in May 1993. We do not address this argument because plaintiff did not plead it in her second amended complaint.

Next, we address whether count II of plaintiff's second amended complaint states a cause of action under sections 2—714 and 2—715 of the Uniform Commercial Code (UCC). Initially, we note that plaintiff contends defendant did not refer to the alleged UCC violations in its motion to dismiss. However, our review of defendant's motion to dismiss indicates otherwise. Accordingly, we proceed to address whether the trial court correctly dismissed count II.

Section 2—714 of the UCC states in relevant part:

"Where the buyer has accepted goods *and given notification (subsection (3) of Section 2—607)* he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." (Emphasis added.) 810 ILCS 5/2—714 (West 1992).

Section 2—715 provides for incidental and consequential damages resulting from the seller's breach. See 810 ILCS 5/2—715 (West 1992).

Defendant argues plaintiff cannot recover under sections 2—714 and 2—715 because the complaint did not adequately allege that plaintiff notified defendant of the breach as required by section 2—607. In fact, plaintiff pleaded that she had not notified defendant when she discovered defendant had overcharged her. Plaintiff argues she was excused from giving direct notice because defendant "has known for years of a statistically significant pattern of mischarges to its customers" and because the filing of plaintiff's complaint served as notice to defendant.

■ However, in *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (1996), our supreme court rejected both of plaintiff's arguments. The court held that a buyer must notify the seller of the troublesome nature of his particular transaction; the buyer cannot rely on the seller's knowledge of problems with third parties. *Connick*, 174 Ill. 2d at 493. Further, the court held that only a consumer buyer who suffers a personal injury may satisfy the section 2—607 notice requirement by filing a complaint against the seller. *Connick*, 174 Ill. 2d at 495. The reason is that, where the breach has not resulted in personal injury, the UCC prefers the breach be cured without a lawsuit. *Connick*, 174 Ill. 2d at 495.

Thus, count II of plaintiff's second amended complaint failed to state a cause of action under sections 2—714 and 2—715 of the UCC because it did not sufficiently allege the notice required under section 2—607.

Plaintiff argues, though, that *Connick* involved a lawsuit where the UCC claims were the initial pleading asserted, and the defendant did not have an opportunity to investigate and negotiate prior to the filing of the suit. In contrast, plaintiff's initial complaint here was a single count alleging a violation of the Consumer Fraud Act. Plaintiff filed an amended complaint three months later adding the alleged UCC violations. Therefore, plaintiff contends defendant had "ample time" to investigate and negotiate a settlement prior to the filing of the UCC claims.

We reject plaintiff's argument. First, it is unclear from *Connick* whether the UCC claims there were the initial pleading asserted or whether they were added later. Moreover, the timing of the UCC claims is irrelevant here. *Connick* holds that the filing of a complaint does not satisfy the notice under section 2—607 of the UCC where the plaintiff was not injured as a result of the seller's breach. Here, the only notice plaintiff gave to defendant was the filing of her complaint. Therefore, the trial court properly dismissed plaintiff's UCC claims.

■ Next, we address whether count III of plaintiff's second amended complaint states a cause of action for unjust enrichment. Plaintiff contends defendant did not refer to count III in its motion to dismiss. Our review of the record indicates otherwise. Accordingly, we proceed to address whether the trial court correctly dismissed count III.

Plaintiff argues she has pleaded a cause of action for unjust enrichment pursuant to section 20 of the Restatement of Restitution. Section 20 provides:

"A person who has paid another an excessive amount of money

because of an erroneous belief induced by a mistake of fact that the sum paid was necessary for the discharge of a duty, for the performance of a condition, or for the acceptance of an offer, is entitled to restitution of the excess." Restatement of Restitution § 20 (1937).

However, defendant correctly points out that section 63 of the Restatement of Restitution provides:

"There is no breach of duty to make restitution because of a transfer made by mistake until the transferee or beneficiary has notice of the facts upon which the transferor's right depends and has had a reasonable opportunity for making restitution." Restatement of Restitution § 63 (1937).

As discussed above, plaintiff failed to adequately plead that she notified defendant about the overcharges. Accordingly, the trial court did not err in dismissing count III of plaintiff's second-amended complaint.

Plaintiff cites *Chicago, Rock Island & Pacific Ry. Co. v. Steckman*, 125 Ill. App. 299 (1906), *aff'd*, 224 Ill. 500 (1906), *Albert Pick & Co. v. Spoor*, 212 Ill. App. 612 (1918), and *McConnaughy v. Gage*, 252 Ill. App. 17 (1929), in support of her argument that she was not required to notify defendant about the overcharge prior to bringing suit. However, those cases are inapposite because they did not involve unjust enrichment claims premised on the mistaken transfer of an excessive amount of money and, thus, were not subject to section 63 of the Restatement of Restitution. Instead, *Steckman* involved a personal injury action, *Spoor* involved a replevin action following nonpayment of a note due on demand, and *Gage* involved a suit brought to enforce payment of a note.

Plaintiff also argues that defendant's fraudulent conduct obviated any notice requirement on her part. See Restatement of Restitution § 63, Comment *a*, at 245 (1937) ("If the transferee acquires the subject matter by fraud his duty to make restitution arises at once; he then has notice of relevant facts and of his duty to restore"). However, as discussed above, plaintiff has failed to adequately plead facts showing a consumer fraud violation. Therefore, plaintiff *was* required to give notice to defendant prior to filing suit.

For the foregoing reasons, we affirm the trial court. In light of our disposition of this case, we need not address plaintiff's argument that the trial court erred in denying plaintiff's motion for class certification.

Affirmed.

CAHILL and THEIS, JJ., concur.