In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-1617

THOMAS P. DAVIS and
CATHY M. DAVIS,

*Plaintiffs-Appellants*,

*v.*

G.N. MORTGAGE CORPORATION and
COUNTRYWIDE HOME LOANS, INC.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 6569—**Charles R. Norgle, Sr.,** *Judge.*

———————

ARGUED JANUARY 15, 2004—DECIDED JANUARY 31, 2005

———————

Before COFFEY, KANNE, and EVANS, *Circuit Judges.*

COFFEY, *Circuit Judge.* On September 9, 1999, Thomas
P. Davis and Cathy M. Davis obtained a $288,000 adjust-
able rate mortgage ("ARM") from the G.N. Mortgage
Corporation ("GN") for the purpose of refinancing prior,
non-business personal debts which was to be secured by
their home in Manhattan, Il. A few months later, GN sold
the note to Countrywide Home Loans, Inc. ("Countrywide").
The Davises paid off the 30-year ARM from GN less than
three years later, on February 20, 2002, and at that time

were assessed over $12,000 in penalties pursuant to the terms of a five-year prepayment penalty rider included in the mortgage document. The Davises objected to the penalty and filed a diversity suit against GN and Countrywide, alleging that the prepayment penalty agreement was fraudulently obtained, that enforcement of the penalty constituted a breach of contract and that the penalty violated the Illinois Interest Act, 815 ILCS 205/1 *et seq.*, and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* The core of the Davises' claim is that the parties had agreed to a twenty-four month prepayment rider, but that GN had nevertheless fraudulently induced them into signing one that provided for a penalty if the loan was paid before sixty months had elapsed. The district court granted the defendants-appellees' motions for summary judgment on each of the Davises' legal claims, and the Davises appealed. We affirm.

## I. BACKGROUND

On September 9, 1999, Thomas and Cathy Davis (the "Davises"), husband and wife and citizens of the State of Illinois, closed on a $288,000 adjustable rate mortgage loan (the "loan") with an initial interest rate of 10.9% from the GN Mortgage Corporation in order to refinance personal debt. Aside from the Davises, the only other party present at the loan closing was Patricia Bogdanovich ("Bogdanovich"), the closing agent for TICOR Title Insurance Company, which was the title company authorized by GN to conclude the transaction.

At the closing, which took place at TICOR's offices in Joliet, Illinois, Bogdanovich presented the Davises with two stacks of paper, each purportedly consisting of 24 documents and totaling 43 pages. Included in the stacks were duplicate copies of the proposed adjustable rate note, mortgage, adjustable rate rider to the mortgage, and accompanying documents entitled "Prepayment Penalty Note Addendum,"

"Alternative Mortgage Transaction Parity Act Disclosure," and "Notice of Right to Cancel." Although the Davises admit that they failed to read or compare the two sets of documents thoroughly at the time of the closing,[1] they allege that Bogdanovich told them that the stacks were identical in content and accurately represented the agreement between themselves and GN, including a provision setting forth a *two-year* prepayment penalty period. The Davises signed all of the documents in one of the stacks and Bogdanovich delivered the signed stack to GN while the Davises retained the unsigned stack for their records.[2]

Early in 2000, GN sold the Davises' mortgage, including all its rights and obligations emanating from the loan agreement, to Countrywide Home Loans, Inc. Thereafter, in the summer of 2001, the Davises requested that Countrywide apprise them of the amount required to satisfy the remaining balance on their loan as of its two-year anniversary; September 9, 2001. Countrywide responded by informing the Davises that a prepayment penalty of approximately $12,000 (six months' worth of interest on the loan) would apply if the loan was paid off prior to the expiration of the *five-year* prepayment penalty period, according to the signed prepayment penalty addendum in their loan file. This came as a surprise to the Davises, who had no knowledge that they had agreed to a five-year prepayment penalty rider

---

[1] Indeed, it appears from the record that the Davises failed to thoroughly read and understand the documents they signed until September of 2001, just before they refinanced the loan, at which time they learned that they would be charged a penalty.

[2] After the closing, either because they were ignorant of it or they had no reason to believe that the terms of the note were any different than they had agreed to, the Davises failed to exercise their right under federal law to cancel the agreement without costs within three business days of signing it.

and instead believed that they had signed, and were only subject to, a two-year prepayment penalty clause based on alleged representations by Bogdanovich as well as their own broker.[3]

Upon reviewing the unsigned copy of the mortgage contract that they retained from the closing, the Davises discovered two documents which they had not previously read entitled "Prepayment Penalty Note Addendum," both of which had been drafted by GN. The riders were identical except that one provided for a "twenty-four month penalty period," while the other provided for a "sixty month penalty

---

[3] The parties agree that GN had initially proposed a three-year prepayment penalty period. Indeed, the Davises' loan file contains a document entitled "Conditional Loan Approval," containing notation of a three-year prepayment penalty period. That document, however, is not signed. The Davises allege that, prior to closing on the loan, their mortgage broker, Monica Boatman ("Boatman"), represented to them that GN had agreed to a two year prepayment penalty period. However, for purposes of this appeal, we will disregard the statement attributed by the Davises to Boatman that GN had agreed to a two-year penalty period because it constitutes inadmissible hearsay. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) ("a party may not rely upon inadmissible hearsay . . . to oppose a motion for summary judgment."). Boatman's alleged comment is clearly an out-of-court statement offered by the plaintiffs for the truth of the matter asserted and, therefore, may not be relied upon by the Davises to resist summary judgment. *See* Fed. R. Evid. 802; *Galdikas v. Fagan*, 342 F.3d 684, 695 (7th Cir. 2003); *Bombard*, 92 F.3d at 562. Nevertheless, we will assume without deciding, that the alleged statements of the title company's closing agent, Bogdanovich, are statements of a party opponent (the assumption being that Bogdanovich was acting as GN's agent at the closing) and thereby admissible under Federal Rule of Evidence 801(d)(2)(D). As such, they may be considered as part of this appeal. Notwithstanding Bogdanovich's statements, however, the Davises' claims still fail as a matter of law as discussed *infra*.

period." The addendum that the Davises signed at the closing was of the "sixty month" species, a fact which they do not dispute. However, the Davises claim that at the closing they signed both a two-year and a five-year addendum. They base this conclusion on the fact that they found a two-year rider in the papers they retained after the closing and that Bogdanovich told them that the two stacks of documents presented at the closing (one signed and returned to GN and the other left with the Davises) were identical. Therefore, the Davises allege that because they signed every document in one of the stacks and found both a five-year and a two-year rider in their stack, they must have signed both versions at the closing. Unfortunately for the Davises though, they are unable to produce a signed two-year agreement. On the other hand, the mortgage companies maintain that the parties never executed a two-year prepayment penalty addendum and that no such rider, signed or unsigned, exists; therefore, the Davises were rightfully charged a penalty when they refinanced before the sixty-month period in the duly signed document elapsed.

On August 23, 2001, the Davises filed a diversity action against GN and Countrywide in the United States District Court for the Northern District of Illinois. In their original complaint, the Davises sought a declaration that their loan was subject to either a two-year prepayment penalty period or no prepayment penalty period whatsoever. They also claimed that they were entitled to relief under the Illinois Interest Act, 815 ILCS 205/1 *et seq.*, which, *inter alia*, makes it unlawful for a loan to provide for a prepayment penalty when that loan has an interest rate in excess of eight percent per annum (the Davis' ARM carried an initial interest rate of 10.9% per annum) and is secured by a mortgage on residential real estate. 815 ILCS 205/4(2)(a). Before the matter was adjudicated, however, the Davises chose to refinance their loan at a lower, fixed interest rate with another mortgage company paying Countrywide the contested $12,781.76

prepayment penalty in the process, thereby mooting this portion of their claim. As a result, on April 2, 2002, the Davises sought leave to file an amended complaint, which the court conditionally granted.[4]

The plaintiffs filed their amended complaint on May 23, 2002, whereupon the trial judge addressed their failure to properly plead diversity jurisdiction and granted them ten days' leave to file a second amended complaint to cure the deficiency, which they accomplished. The second amended complaint,[5] filed on May 30, 2002, contained four counts, alleging: (1) that each of the defendants violated the Illinois Interest Act when they imposed a prepayment penalty without an agreement authorizing them to do so; (2) that Countrywide breached the parties' contract by imposing a five-year prepayment penalty period; (3) that

---

[4] Before the district court ruled on this motion, it required that the Davises present documentation supporting their proposed amended complaint. Accordingly, the plaintiffs produced a two-page declaration from Thomas Davis, dated April 19, 2002, that recounted his version of what occurred at the signing of the mortgage contract.

[5] In response to the district court's concerns over the existence of federal jurisdiction, the plaintiffs properly pled, in their second amended complaint, that they were citizens of Illinois, not merely residents of the state. Neither of the defendants is an Illinois corporation or has the State of Illinois as its principal place of business. There also remained a question as to whether the amount in controversy exceeded $75,000, given that the dispute appears to be over a $12,000 prepayment penalty. However, the plaintiffs' claim under the Illinois Interest Act sought statutory damages in "an amount equal to twice the total of all interest, discount and charges determined by the loan contract." 815 ILCS 205/6. Given that the loan amount was for $288,000, diversity jurisdiction was proper. *Cf. McCarthy v. Option One Mortgage Corp.*, 362 F.3d 1008 (7th Cir. 2004) (finding diversity jurisdiction in Illinois Interest Act claim based on a $145,800 loan).

GN through their agent Bogdanovich intentionally committed common law fraud when they misrepresented the terms of the Davises' mortgage loan; and (4) that GN fraudulently caused the Davises to sign inconsistent prepayment penalty riders, in violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*

At the time that the Davises filed their amended complaint, they also sought discovery from the defendants. However, due in part to settlement negotiations and two separate stays issued by the trial judge—one giving the Davises leave to file a second amended complaint and the other allowing GN to file a motion for summary judgment—GN failed to reply to any of the Davises' discovery requests.[6] However, both of the mortgage company defendants had previously complied with initial discovery requirements in accordance with Federal Rule of Civil Procedure 26(a)(1), and each provided the Davises copies of their respective

---

[6] The plaintiffs' initial discovery requests from October 2001 had been postponed through the beginning of 2002 because of agreement by the parties to allow for settlement negotiations. Their settlement efforts failed, and on March 20, 2002, the district court issued a scheduling order that included a discovery cut-off date of July 31, 2002. Accordingly, on April 9, 2002, the Davises served discovery requests on both mortgage company defendants, as well as a notice of deposition for Bogdanovich. The trial judge, however, stayed discovery three days later pending his ruling on the Davises' motion for leave to file an amended complaint, which the court later granted. The stay was lifted on May 23, 2002, seven days before the plaintiffs filed their second amended complaint.

On July 11, 2002, the Davises' counsel sent a letter to the defendants requesting immediate compliance with their outstanding discovery requests. That same day, GN filed a motion to stay discovery based upon its intention to file a motion for summary judgment. The district judge granted this stay. Thus, throughout this entire pretrial process, the defendants failed to respond to any of the plaintiffs' discovery requests.

loan files for the September 9, 1999, transaction. Neither company's copy of the Davises' loan file contained a two-year addendum (either signed or unsigned), but both contained a signed, five-year addendum.

On July 24 and July 26, 2002, GN and Countrywide, respectively, filed motions for summary judgment. At this time, the plaintiffs filed an emergency motion to reconsider and vacate the district court's July 12 order staying discovery pending defendants' motions for summary judgment and to obtain discovery pursuant to Federal Rule of Civil Procedure 56(f). The trial court denied this motion on July 26, 2002. The district court granted the defendants summary judgment on all of the Davises' claims on February 13, 2003. We affirm.

## II. ANALYSIS

At the outset, we note that in a case where subject matter jurisdiction in federal court is premised on diversity jurisdiction under 28 U.S.C. § 1332, we apply the substantive law of the forum state, here Illinois. See *Merrill v. Trump Indiana, Inc.*, 320 F.3d 729, 731 (7th Cir. 2003). Thus we are obligated to "determine the issues presented herein as we believe the [Illinois] courts would." *See Trytko v. Hubbell, Inc.*, 28 F.3d 715, 719 (7th Cir. 1994) (quoting *Kutsugeras v. Avco Corp.*, 973 F.2d 1341, 1346 (7th Cir. 1992)).

*A.   The District Court's Grant of Summary Judgment in Favor of the Mortgage Companies*

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review a district court's grant of summary

judgment *de novo*, considering "all of the available affidavits, depositions, transcripts, and exhibits in the light most favorable to the non-moving party." *Driebel v. City of Milwaukee*, 298 F.3d 622, 636 (7th Cir. 2002). A genuine factual issue is one "'that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party.'" *Zemco Mfg. Inc. v. Navistar Int'l Transp. Corp.*, 270 F.3d 1117, 1123 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Such an issue "is material only if it might affect the outcome of the case under the governing law." *Doe v. Roe No. 1*, 52 F.3d 151, 153 (7th Cir. 1995) (internal quotation marks omitted); *see also Korf v. Ball State Univ.*, 726 F.2d 1222, 1226 (7th Cir. 1984). "[W]e are not required to draw every conceivable inference from the record," *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1139 (7th Cir. 1997), and mere speculation or conjecture will not defeat a summary judgment motion, *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 591 (7th Cir. 1997).

The Davises assert that the district court erred in granting summary judgment to the defendants because a genuine issue of material fact exists concerning whether or not they signed a two-year prepayment penalty addendum to their loan at the closing. Premised primarily on Thomas Davis's two-page personal declaration, the Davises allege that: (1) their loan application originally reflected a proposed, three-year prepayment penalty period; (2) their own loan broker, Boatman, had informed them prior to closing that GN had agreed to a two-year prepayment penalty period; (3) at the closing, the Davises were presented with two stacks of documents by Bogdanovich and instructed to sign one copy which would be returned to GN, while the other should be retained for their (the Davises') records; (4) while they failed to read and compare these two stacks line-by-line, Bogdanovich, the closing agent, told them that the stacks were identical and represented their agreement with

GN in all material aspects, including the agreed-upon two-year prepayment penalty rider; and (5) upon later review, the Davises found that *their* stack of loan documents contained both an unsigned two-year prepayment penalty addendum as well as an unsigned five-year addendum.

Based on these alleged facts,[7] the Davises argue that a reasonable trier of fact could infer that at the closing they signed a two-year addendum in addition to the five-year addendum discovered in the defendants' files. Furthermore, the plaintiffs claim that the existence of an unsigned two-year addendum in their records is material to all of their claims renewed on appeal; *i.e.*, it is material to their breach of contract claim because it establishes that the agreed-upon and intended prepayment penalty period under the contract is unclear, and it is material to the statutory and common law fraud claims because it explains the allegedly deceptive circumstances surrounding the obtainment of the prepayment penalty agreement.

### 1.   Breach of Contract Claim

The Davises claim Countrywide breached the September 9, 1999, loan contract by enforcing a five-year prepayment penalty rather than honoring an allegedly agreed-upon two-year prepayment penalty. However, the

---

[7]   The Davises also highlight the fact that, at an April 12, 2002, status hearing, one of GN's attorneys stated that an *unsigned*, two-year prepayment penalty agreement existed in the plaintiffs' loan file. However, GN's counsel withdrew this statement at the very next status hearing, expressing to the court and the Davises that his statement had been made in error. In its order granting the defendants summary judgment, the trial judge determined that the statement did not constitute a judicial admission and, therefore, could not go towards creating a genuine issue of material fact as to the existence of a signed, two-year penalty agreement.

only evidence of any agreement to a two-year prepayment penalty period, beyond the statements the Davises claim Bogdanovich made at the closing, is an unsigned copy of a two-year prepayment penalty addendum that they (the Davises) received and retained from the closing for their records.

Illinois adheres to a "four corners rule" of contract interpretation, which provides that "'[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence.'" *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999) (quoting *Western Ill. Oil Co. v. Thompson*, 186 N.E.2d 285, 287 (Ill. 1962)). This approach is consonant with the general rule under Illinois contract law that "if the contract imports on its face to be a complete expression of the whole agreement, it is presumed that the parties introduced into it every material item, and parole evidence cannot be admitted to add another item to the agreement." *Sunstream Jet Express, Inc. v. Int'l Air Service Co., Ltd.*, 734 F.2d 1258, 1265 (7th Cir. 1984) (quoting *Pecora v. Szabo*, 418 N.E.2d 431, 735-36 (1981); *see J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 642 N.E.2d 1215, 1217 (Ill. 1994). In other words, "[u]nder the parol evidence rule, extrinsic or parol evidence concerning a prior or contemporaneous agreement is not admissible to vary or contradict *a fully integrated writing*." *Id.* (emphasis in original) (internal quotations omitted). However, "even when a contract is integrated on its face, if the contract is ambiguous, as a matter of law, then extrinsic and parole evidence is admissible to explain the terms of the ambiguous contract." *Sunstream*, 734 F.2d at 1266 (quoting *Storybrook Homes, Inc. v. Carlson*, 312 N.E.2d 27, 29 (Ill. App. Ct. 1974) (internal quotations omitted); *see Pappas v. Waldron*, 751

N.E.2d 1276, 1282 (Ill. App. Ct. 2001) (citing *Air Safety*, 706 N.E.2d at 884).

Accordingly, our task is to determine whether the loan agreement is fully integrated, clear and unambiguous, *Krautsack v. Anderson*, 768 N.E.2d 133, 146 (Ill. App. Ct. 2002). The threshold question for us to examine is whether the contract in question, here the mortgage loan note, is a fully integrated document, despite the lack of a specific integration clause. *See J & B Steel Contractors, Inc.*, 642 N.E.2d at 1217. The determination of whether a contract is integrated is a question of law for the trial judge to decide. *See id*. An integrated writing is one "intended by the parties to be a final and complete expression of the entire agreement," *Krautsack*, 768 N.E.2d at 146 (internal quotation marks omitted), which means it "'contains such language as imports a complete legal obligation,'" *Eichengreen v. Rollins, Inc.*, 757 N.E.2d 952, 958 (Ill. App. Ct. 2001) (quoting *Armstrong Paint & Varnish Works v. Continental Can Co.*, 133 N.E. 711, 713 (1921)). Importantly, "only the subject writing may be considered to determine the integration question." *Id*. at 957; *see also J & B Steel*, 642 N.E.2d at 1218-20 (affirming the vitality of this rule, which was first established in Illinois in *Armstrong*, 133 N.E. 711 (1921)).

The loan agreement entered into between GN and the Davises is fully integrated, final in nature, and creates a completed legal obligation between the parties. When viewing the loan agreement in its entirety, we find an uncomplicated set of documents that, when read together, clearly and specifically state that the loan is subject to a prepayment penalty period of five years duration, as provided for in a separately executed addendum. The Davises, in their attempt to establish non-integration, cite to the underlying promissory note, which provides that the borrower has the right to repay the loan at any time without penalty. However, other documents in the agreement, *i.e.*, the one-page

prepayment penalty note addendum itself, plainly states that "notwithstanding and provision to the contrary [to language] contained in said Promissory Note or Deed of Trust . . . [t]he first sixty months of the loan term is called the 'penalty period.'" GN Mortgage Corporation's Memorandum in Support of Its Motion for Summary Judgment, Exh. D. The inherent purpose of the addendum to the contract is to alter the terms of the underlying agreement (here the promissory note) and the existence of such a document can not reasonably be construed as establishing non-integration. Also, the documents comprising the loan agreement were all executed on the same day, contemporaneous with each other and, after reviewing each, we hold them to be internally coherent and fully integrated. In addition, the Davises have failed to present us with any case law to even suggest that the lack of a specific integration clause in the loan agreement, in and of itself, would render the agreement incomplete or unintegrated. *See Eichengreen*, 757 N.E.2d at 957-58 (discussing *J & B Steel*, 642 N.E.2d 1215 (Ill. 1994)).

Notwithstanding the clear, comprehensive and integrated nature and language of the loan contract, the Davises also argue that the agreement is facially ambiguous because of the existence of an *unsigned* two-year penalty addendum document in *their* stack of the closing papers. This reasoning is unpersuasive; for the Davises cannot cite their *unsigned* copy of a two-year prepayment penalty rider, the very extrinsic evidence they seek to introduce, to establish that the contract is facially ambiguous thereby requiring the consideration of extrinsic evidence. The introduction of parole evidence to establish ambiguity in a facially unambiguous, signed, dated and fully integrated contract is a practice which the Illinois Supreme Court has, to this date, neither condoned nor sanctioned, and accordingly we refuse to do so today. *Air Safety, Inc.*, 706 N.E.2d at 884-85; *Commonwealth Ins. Co. v. Titan Tire Corp.,* 2004 WL

2439727, \*4 n.4 (7th Cir. 2004); see also *See PPM Finance, Inc. v. Norlandal USA, Inc.*, No. 04-1401, slip op. at 6 (7th Cir. Dec. 16, 2004) (stating that Illinois courts will "look to extrinsic evidence to determine the parties intentions only if an agreement is ambiguous.").

The Davises argue that we should employ the "provisional admission approach" and consider extrinsic evidence concerning even facially unambiguous agreements. However, in *Air Safety*, the Illinois Supreme Court reiterated the state of contract law and the four-corners rule in Illinois when it stated: "If the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parole evidence. *Air Safety, Inc.*, 706 N.E.2d at 884. In that same case, the Supreme Court made clear that Illinois has "never officially adopted the provisional admission approach." *Air Safety, Inc.*, 706 N.E.2d at 885 n.1. In addition, the Court "expressly decline[d] to rule on whether the provisional admission approach may be applied to interpret a contract which does not contain an integration clause until such a case is squarely before [it]." *Id.*; but cf. *AM Int'l, Inc. v. Graphic Mgmt. Assocs.*, 44 F.3d 572, 574 (7th Cir. 1995). It is true that, although never definitively adopted either by the legislature of Illinois or the highest court of that State, this court as well as a number of the Illinois appellate courts have entertained the theory that under Illinois law "objective evidence supplied by disinterested third parties may establish an extrinsic ambiguity" in an otherwise unambiguous contract under certain limited circumstances.[8] *Commonwealth Ins.*

---

[8] However, even if the Illinois Supreme Court were to adopt the provisional admission rule, we do not believe that this rule would apply in situations, such as the one before us, where a party is seeking to introduce a completely new and different term into a facially integrated and unambiguous contract. There is a sub-
(continued...)

*Co.*, 2004 WL 2439727, \*4 (quoting *Ocean Atl. Dev. Corp. v. Aurora Christian Schs., Inc.*, 322 F.3d 983, 1003-04 (7th Cir. 2003)); *see also Air Safety, Inc.*, 706 N.E.2d at 885 (listing Illinois appellate court decisions). However, because the Davises do not proffer objective third-party evidence,[9] this suggested rule is inapplicable and, therefore, it is unnecessary for us to predict whether the Illinois Supreme Court would adopt this new rule of law. See *Commonwealth Ins. Co.*, 2004 WL 2439727, \*4 n.4.[10]

---

[8]  (...continued)
stantial difference between the interpretation of contractual terms and the addition of supplemental terms which were not contained in the original writing. Although not discussed at length in the case law, the provisional rule would seem only to encompass the interpretation of a contract's term(s), rather than the wholesale substitution of one term for another. *See*, *e.g.*, *Air Safety, Inc.*, 706 N.E.2d at 885 (Under the provisional method "an extrinsic ambiguity exists when someone who knows the context of the contract would know if the contract actually means something other than what it seems to mean."); *Ahsan v. Eagle, Inc.*, 678 N.E.2d 1238, 1241 (Ill. App. Ct. 1997); *Meyer v. Marilyn Miglin, Inc.*, 652 N.E.2d 1233, 1238-39 (Ill. App. Ct. 1995); see also *Ocean Atl. Dev. Corp., Inc.*, 322 F.3d 983, 1003-04; *AM Int'l, Inc.*, 44 F.3d 572, 575.

[9]  Even if this court were to "provisionally admit" the two-year, unsigned prepayment penalty rider, we would not be moved to hold in favor of the Davises' theory of the law. The fact remains that the signed rider states on its face that the term shall be five years. In addition, no signed or unsigned two-year rider was ever found in the Davises' loan file at GN or Countrywide. There is nothing ambiguous about the terms of the five-year addendum, nor does the existence of an unsigned two-year agreement interject ambiguity into an otherwise unambiguous, cohesive and fully integrated contract.

[10] The only objective evidence which the Davises have produced in order to establish an extrinsic ambiguity with (their copy of an unsigned two-year addendum) was not supplied by a disinterested

(continued...)

In all, the entire loan contract, including its five-year prepayment penalty agreement, is clear, unambiguous and fully integrated; rendering extrinsic evidence inadmissible to vary the contract's terms. The Davises essentially ask us to rewrite the signed and dated contract to include a shorter prepayment penalty period, "but courts are not in the business of rewriting contracts to appease a disgruntled party unhappy with the bargain it struck." *PPM Finance, Inc.*, No. 04-1401, slip op. at 6 (7th Cir. Dec. 16, 2004). Thus, after review and consideration of the totality of the evidence, as is required, we hold that the signed and dated five-year addendum is the only legally binding agreement between the parties as to a prepayment penalty, and absent fraud, Countrywide cannot be found to have breached their agreement with the Davises by merely enforcing their rights to collect a penalty under the contract.

### 2.   Common Law Fraud

The Davises, in a separate count of their complaint, go on to allege that GN perpetrated a common law fraud during

---

[10] (...continued)

third party, but was proffered by the Davises themselves, thus excepting them from the purview of the suggested rule. *See Commonwealth Ins. Co.*, 2004 WL 2439727, *4. The only other evidence (besides the unsigned two-year addendum) that the Davises offer to establish extrinsic ambiguity is in the form of the Davises' own affidavit concerning the events surrounding the signing of the contract and statements as to what Bogdanovich allegedly told them the night of the closing. However, as subjective evidence, the Davises' statement about what Bogdanovich allegedly said would not be considered admissible to demonstrate extrinsic ambiguity in the contract because they are subjective in nature. *See Ocean Atl. Dev. Corp.*, 322 F.3d at 1004 (The parties' own subjective construction of the contract will not provide grounds for stepping outside the four corners of the contract.).

the execution of the contract, which occurs "where there is a surreptitious substitution of one paper for another, or where by some other trick or device a party is made to sign an instrument which he did not intend to execute." *Belleville Nat'l Bank v. Rose*, 456 N.E.2d 281, 283 (Ill. App. Ct. 1983) (citing *Turzynski v. Libert*, 259 N.E.2d 295, 298 (Ill. App. Ct. 1970)). The Davises claim that GN, along with its purported agent (Bogdanovich), mislead them by misrepresenting the terms of the mortgage loan at the closing. The Davises allege GN did so by presenting them with different versions of the prepayment penalty addendum, one of which (the five-year version) was different from what they bargained for and expected.

Under applicable Illinois law, an allegation of fraud must be established by clear and convincing evidence. *Cwikla v. Sheir*, 801 N.E.2d 1103, 1110 (Ill. App. Ct. 2003). However, unlike the plaintiffs' breach of contract claim, Illinois substantive law instructs that we are free to consider parole evidence to assist us in determining the true intent of the parties when a common law fraud has been alleged.[11] *See O'Brien v. Cacciatore*, 591 N.E.2d 1384, 1390 (Ill. App. Ct. 1992); *McMahon Food Corp. v. Burger Dairy Co.*, 103 F.3d 1307, 1314 (7th Cir. 1996). Under Illinois law, the elements the plaintiffs need to satisfy in order to establish common law fraud are: "(1) a false statement of a material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the

---

[11] While the Davises also allege the mutual mistake exception to the parol evidence rule before this court, that argument was not made before the district court at summary judgment. As such, it will not be considered. *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 586 (7th Cir. 1999).

statement." *Capiccioni v. Brennan Naperville, Inc.*, 791 N.E.2d 553, 558 (Ill. App. Ct. 2003).

In order to satisfy the reliance element of their claim, the Davises must demonstrate not only that they relied on the GN's representations regarding a two-year prepayment rider, but that they were justified in doing so. *See Soules v. Gen. Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980). When addressing the issue of justified reliance, Illinois courts have long recognized that "a party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth . . . he cannot be heard to say he was deceived by misrepresentations." *Elipas Enterprises, Inc. v. Silverstein*, 612 N.E.2d 9, 13 (Ill. App. Ct. 1993) (quoting *Schmidt v. Landfield*, 169 N.E.2d 229, 232 (Ill. 1960)); *see also Leon v. Max E. Miller & Son, Inc.*, 320 N.E.2d 256, 260 (Ill. 1974); *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 9 (Ill. App. Ct. 2001). This rule applies with equal force in instances where fraud is alleged with respect to the execution of a written contract. *See Belleville*, 456 N.E.2d at 284; *see also N. Trust Co. v. VIII S. Mich. Assoc.*, 657 N.E.2d 1095, 1103 (Ill. App. Ct. 1995) ("A party cannot close his eyes to the contents of a document and then claim that the other party committed fraud merely because it followed this contract."). This is the so-called "due diligence rule," *Kolson v. Vembu*, 869 F. Supp. 1315, 1322 (N.D. Ill. 1994), which defeats the Davises' common law fraud claim.

Assuming *arguendo* that were we to conclude that the Davises satisfy the other elements of a common law fraud claim (*e.g.*, a knowingly false statement as to a material fact which was proffered to induce reliance), which they do not, the evidence in the record would be deemed to be insufficient to establish that any reliance on their part was justified. The Davises' claim is premised on oral statements allegedly made by the closing agent, Bogdanovich, explaining at the

time of the execution of the contract that the mortgage included a two-year prepayment penalty period. However, notwithstanding the alleged statements by Bogdanovich, the Davises had an opportunity and obvious obligation to read the documents before they signed them (as well as up to three days after signing to review and cancel the contract under federal law if they believed the agreement to be flawed). Due to the significance of the mortgage transaction (a $288,000 loan) and the Davises' preoccupation with the prepayment penalty agreement in particular, they were not justified in relying on the alleged verbal statements alone. The fact is that the Davises certainly had an incentive to independently read and understand the contract in order to confirm that the terms they were agreeing to, *especially the addendum regarding the prepayment penalty period*, were correctly set forth in the final version of the contract. Their failure to read the prepayment addendum document which they signed is even less justified in light of the fact that, in addition to the ample two-hour closing meeting, the Davises also were made aware that they had a full three-day period in which to review the entire agreement and rescind it if they so decided.[12] Indeed, considering the multiple obligations which the mortgage document imposed upon them, as well as the amount of money involved ($288,000), the Davises would have been well advised to visit a qualified attorney within that time period to review and fully explain the documents if in fact they had any doubts or concerns over its contents. Nonetheless, because the Davises were "afforded the opportunity of knowing the truth of the representations . . . [, yet did] not avail [them-

---

[12] The Davises signed and dated a "**NOTICE OF RIGHT TO CANCEL**" form which alerted them to the fact that they had "a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS." Tr. 42, Exh. E. (Emphasis in original).

selves] of the means of knowledge open to [them, they] cannot be heard to say [they were] deceived by misrepresentations." *Elipas Enterprises*, 612 N.E.2d at 13 (quoting *Schmidt*, 169 N.E.2d at 232). Thus, on the facts set forth here and in the record, we hold that the reliance element of the Davises' common law fraud claim cannot be met as a matter of law.

### 3.   *Illinois Consumer Fraud Act*

The plaintiffs also claim that GN's actions during and surrounding the closing on the loan violated the Illinois Consumer Fraud Act ("ICFA"). In order to be held liable for a violation of the ICFA the Davises must establish that: (1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occured; and (5) the damage complained of was proximately caused by the deception. *Capiccioni*, 791 N.E.2d at 558 (citing *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996)); 815 ILCS 505/2. While a complaint made pursuant to the ICFA "must be pled with the same specificity as that required under common law fraud," *Elson v. State Farm Fire & Cas. Co.*, 691 N.E.2d 807, 816 (Ill. App. Ct. 1998), the ICFA does not require a plaintiff to "show actual reliance or diligence in ascertaining the accuracy of misstatements," *Zimmerman v. Northfield Real Estate, Inc.*, 510 N.E.2d 409, 417-18 (Ill. App. Ct. 1986). Thus, because the Davises' lack of due diligence in reviewing the document at the closing or requesting further assistance or explanation of the prepayment penalty addendum during the 96-hour review period is not dispositive of the consumer fraud claim, we will examine their ICFA claim separately from the common law fraud claim. *See Cozzi*

*Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 576 (7th Cir. 2001); *Miller*, 762 N.E.2d at 13.

The Davises contend that GN deceived them by enclosing both a two-year and a five-year prepayment penalty agreement in the closing documents and representing to them, through their agent Bogdanovich, that the unsigned and undated documents reflected the Davises' agreement with GN for a two-year prepayment penalty period. They maintain that this resulted in their signing two inconsistent penalty riders, one for five years and the other for two (there is no evidence that a two-year rider was ever signed, *i.e.*, they never produced a signed two-year addendum and their assumption that they did sign one is completely unsupported in the record). While it is suspicious, and at the very least suggests poor business practices at GN, for the Davises to be given a copy of both a two-year and a five-year prepayment penalty addendum at the closing, the fact remains that they *actually signed* only the five-year rider. Nowhere in the record do the Davises (nor does anyone else) state definitively that a two-year addendum was signed nor has any such signed addendum been presented to us in the record, much less introduced into evidence. The circumstances surrounding the closing on the loan that the Davises point to as proof of deception, including evidence of Bogdanovich's alleged misrepresentations, falls far short of rising to the level of sufficient evidence to permit a reasonable trier of fact to find for the plaintiffs on this claim when considering the signed five-year agreement. *See Zemco Mfg. Inc.*, 270 F.3d at 1123.

Moreover, when analyzing a claim under the ICFA, the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff. *See Tudor v. Jewel Food Stores, Inc.*, 681 N.E.2d 6, 8 (Ill. App. Ct. 1997); *Saunders v. Michigan Ave. Nat'l Bank*, 662 N.E.2d 602, 608 (Ill. App. Ct. 1996); *see also Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938-39 (7th Cir. 2001) (apply-

ing the Illinois ICFA). In this case, GN alerted the Davises, in a number of ways, to the fact that they were agreeing to a five-year penalty period. First, the one-page, five-year penalty addendum that the Davises were asked to read and that they *did* sign contained a disclaimer in bold at the top, warning the Davises: "**Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement**." (Emphasis in original.) Second, the addendum that they signed contains three separate references to a sixty-month/five-year penalty period. Third, GN required that the Davises execute this addendum to the mortgage separately from the remainder of the document, apparently in an attempt to denote its significance. Finally, though less telling, GN provided the Davises with an Alternative Mortgage Transaction Parity Act Disclosure form at the closing (which the plaintiffs signed) informing them that a prepayment penalty would be charged and that they should refer to the accompanying loan documents for the details of the provision. Even if there was some confusion on the Davises' part during the closing (and there may well have been), at no time during the closing nor at anytime within the three day grace period did the Davises ever question, much less challenge the documents they had signed. In sum, there is no evidence to establish by clear and convincing evidence that GN engaged in a deceptive act in the course of obtaining the loan agreement from the plaintiffs.[13]

---

[13] The Davises had also claimed in the district court that the defendants violated the Illinois Interest Act, 815 ILCS 205/1 *et seq.*, by imposing a prepayment penalty without an effective agreement to do so. As we have shown, however, there was an effective agreement between the parties—namely, a five-year prepayment penalty addendum. In any event, as the district court correctly

(continued...)

*B. Plaintiffs' Request to Conduct Additional Discovery*

Finally, the Davises claim that it was an abuse of discretion on the part of the trial judge to deny their motion for a continuance to conduct additional discovery. Federal Rule of Civil Procedure 56(f) provides that, if a party opposing a summary judgment motion has demonstrated that it is unable to "present by affidavit facts essential to justify [its] opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Fed. R. Civ. P. 56(f). The Davises argue that, had they been allowed extra time to depose their own broker as well as the title company representative present at the closing (Bogdanovich) and various other employees of the defendants—all of whom, according to the Davises' unsupported representations, they were unable to obtain statements from through their own efforts—that they would have been able to produce evidence sufficient to withstand summary judgment.

"A trial judge's decision to consider a defendant's motion for summary judgment before allowing the plaintiff to depose certain witnesses is a discovery matter, which we review under the abuse of discretion standard." *Grayson v. O'Neill,*

---

[13] (...continued)

pointed out, the five-year addendum was drafted in accordance with the Alternative Mortgage Transaction Parity Act, which preempts the Illinois Interest Act when, as here, a non-federal housing creditor elects to be governed by and complies with federal law. 12 U.S.C. § 3803(c); *see also McCarthy v. Option One Mortgage Corp.,* 362 F.3d 1008 (7th Cir. 2004). (No. 03-3474, 7th Cir. 2004); *Nat'l Home Equity Mortgage Ass'n v. Face*, 239 F.3d 633, 635 (4th Cir. 2001). As such, the appellants' claim that the defendants violated the Illinois Interest Act, to the extent it remained in contention on appeal, fails.

308 F.3d 808, 815-16 (7th Cir. 2002). We are very troubled with the substance of the plaintiffs' Rule 56(f) motion, which leads us to conclude that the district court did not abuse its discretion in denying additional discovery. Initially, we note that the Davises' assertion that *no* discovery occurred prior to the district court's summary judgment ruling is inaccurate. To the contrary, by late November 2001, both of the defendants had complied with their initial discovery obligations under Federal Rule of Civil Procedure 26(a)(1). In particular, they had disclosed complete copies of the Davises' loan file, neither of which included a two-year signed or unsigned prepayment penalty addendum.

Nonetheless, the Davises argued before the district court that, because "a question of fact exists with regard to the location of a two-year prepayment penalty rider signed by the plaintiffs . . . , [they] must be allowed to depose all employees, agents, or representatives of defendants . . . who had any physical contact with plaintiffs' loan file." Edelman Dec. at 2. However, the plaintiffs fail to set forth any specific evidence which they might have obtained from these depositions that would create a genuine issue as to this material fact. The only reason to believe that additional, relevant evidence would materialize from deposing the defendants' employees is the Davises' apparent hope of finding a proverbial "smoking gun"—that is, someone who will testify that he or she knows that a signed, two-year prepayment penalty provision did actually exist at some time and that the defendants have either hidden, destroyed, or otherwise disposed of this document. This, however, is based on nothing more than mere speculation and would amount to a fishing expedition, which is an entirely improper basis for reversing a district court's decision to deny a Rule 56(f) motion. *Grayson*, 308 F.3d at 817; *United States v. On Leong Chinese Merch. Assoc. Bldg.*, 918 F.2d 1289, 1294-95 (7th Cir. 1990). Likewise, the Davises' desire to now depose the GN and Countrywide officials that had authority over their loan

(Brian Brandt and Patrice McPherson, respectively) is also an insufficient reason for this court to hold that the district court abused its discretion. Both Brandt and McPherson stated via affidavit that the Davises' loan file did not contain either a signed or unsigned two-year prepayment penalty addendum and the depositions sought would be solely for purposes of casting doubt on the affiants' credibility and to reach "the unlikely possibility . . . [that] an adverse witness may contradict an earlier statement or volunteer an admission." *On Leong*, 918 F.2d at 1294. However, this is not a valid reason for a court to grant a motion for a continuance to conduct additional discovery because, as this court has explained, Rule 56(f) "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." *Id.*

The Davises have failed to adequately explain, either in their briefs before this court or in the declaration of their counsel, Daniel Edelman, attached to their Rule 56(f) motion, and it remains a mystery why they failed to acquire an affidavit or deposition testimony from Boatman and Bogdanovich—the two *third-party* witnesses whose alleged statements are necessary to support the plaintiffs' belief that they signed a two-year prepayment penalty agreement. According to the Davises, Boatman would testify that she informed them prior to the closing that GN agreed to a two-year prepayment penalty period, while Bogdanovich would state that she watched the Davises sign each document after having told them that the two stacks of documents were identical and conformed to the terms of their agreement with GN.

Assuming that both of these witnesses would need to be subpoenaed before testifying, the plaintiffs had ample time (a total of 74 days of open discovery) to attempt to secure their testimony as well as approach the trial court and de-

mand compliance to their discovery requests if needed.[14] Indeed, neither Boatman (who was the Davises' *own* broker for the loan), nor Bogdanovich (who worked for the title company that facilitated the closing and delivered the signed copies to GN), is a GN employee. The plaintiffs' *only* explanation for their inability to acquire statements from these third-party sources is a conclusory and self-serving statement alleging that because their mortgage broker and the title agent have existing relationships with GN, they wish not to sour that bond by commenting on the Davises' closing. However, this speculative explanation for the Davises' inability to gather evidence from Boatman and Bogdanovich is feeble at best and, as such, is both inadequate and insufficient to avoid circuit precedent holding that "[w]hen a party fails to secure discoverable evidence due to his own lack of diligence, it is not an abuse of discretion for the trial court to refuse to grant a continuance to obtain such information." *Pfeil v. Rogers*, 757 F.2d 850, 857 (7th Cir. 1985).

Also, we are of the opinion and thus hold that the district court did not commit a reversible error by denying the Davises' Rule 56(f) motion due to the fact that they have failed to establish they suffered any actual or substantial harm as a result of the denial of their discovery request.

---

[14] While the plaintiffs had issued subpoenas to depose Boatman and Bogdanovich on October 31, 2001, discovery was stayed shortly thereafter by agreement of the parties so that settlement negotiations could occur. That agreed-upon stay remained in effect apparently until the district court's March 20, 2002, scheduling order. Discovery was not postponed again until April 12, when the trial judge ordered discovery to be stayed until it could rule on the plaintiffs' motion for leave to file an amended complaint. This stay was lifted on May 23, 2002. Afterwards, discovery remained open until July 12 of that year, when the district court again postponed discovery pending its ruling on the defendants' motions for summary judgment.

*Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 319 (7th Cir. 2003). Regardless of what their proposed discovery might possibly have uncovered, the fact remains that the Davises failed to properly examine the documents they were executing, for if they had, they would have discovered that they had signed a five-year prepayment penalty agreement. Because the harm they suffered was due to their own negligence, the Davises were not justified in relying on any alleged representations made by GN or its agent and are precluded from now claiming that GN committed fraud. Finally, the Davises have failed to demonstrate that additional discovery would reasonably allow them to establish the deception prong of the Illinois Consumer Fraud Act. The Davises' justification for a continuance of discovery in support of their ICFA claim is not genuine and convincing, but barely colorable, especially in light of their burden, *i.e.*, to prove fraud by clear and convincing evidence, *Turzynski*, 259 N.E.2d at 299. As such, the Davises were not justified in pursuing additional discovery under Rule 56(f), and the district court was permitted to use its discretion in denying the Rule 56(f) motion. *See Pfeil*, 757 F.2d at 856.

## III.  CONCLUSION

Because the Davises have failed to establish the existence of a genuine issue of material fact as to any of their claims, and because the defendants are entitled to a judgment as a matter of law on each of those counts, summary judgment is proper. Fed. R. Civ. P. 56(c). In addition, the plaintiffs have failed to "provid[e] a compelling argument why discovery should be continued." *Balderston*, 328 F.3d at 318. Thus, the district court's order granting the defendants' motions for summary judgment is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—1-31-05