**Jorge Cazarez GARCIA and Miriam M. Marquez, husband and wife, Plaintiffs,**

v.

**FANNIE MAE, a government-sponsored enterprise; BAC Home Loan Servicing, a Texas limited partnership; and Abacus Mortgage, Inc., a dissolved Washington corporation, Defendants.**

**No. CV 10–1007–HU.**

United States District Court,
D. Oregon,
Portland Division.

June 14, 2011.

Nanina D. Takla, Phil Goldsmith, Law Office of Phil Goldsmith, Portland, OR, for Plaintiffs.

Kaley L. Fendall, Davis Wright Tremaine LLP, Portland, OR, for Defendants.

## OPINION AND ORDER

REDDEN, District Judge:

On May 11, 2011, Magistrate Judge Dennis Hubel filed his Findings and Recommendation (doc. 39) that the court dismiss plaintiffs' claim for statutory damages and their claims against defendant BAC Home Loans Servicing, but denying defendants' motion to dismiss plaintiffs' remaining claims. Magistrate Judge Hubel also recommended the court grant plaintiffs' motion to strike the Declaration of Kaley F. Fendall.

■ The matter is now before this court. 28 U.S.C. § 636(b)(1)(A); Fed. R.Civ.P. 72(b). Although plaintiffs' timely filed partial objections, the parties subsequently stipulated to plaintiffs' withdrawal of those objections "so that the court [may] review the Findings and Recommendation as not having been objected to by either party." Stipulated Withdrawal of Plaintiffs' Partial Objection, at 2 (doc. 43). This relieves me of my obligation to review Magistrate Judge Hubel's factual findings *de novo*. 28 U.S.C. § 636(b)(1)(C); *see also Thomas v. Arn*, 474 U.S. 140, 149–50, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);

*United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003). Having reviewed the legal principles *de novo*, I find no error.

Accordingly, I ADOPT Magistrate Judge Hubel's Findings and Recommendation (doc. 39) as my own opinion. I GRANT in part, and DENY in part defendants' motion to dismiss (doc. 16) as follows. I GRANT defendants' motion to dismiss plaintiffs' claim for statutory damages. I GRANT the motion to dismiss plaintiffs' claims against defendant BAC Home Loans Servicing, and DISMISS the claims against BAC Home Loan Servicing without prejudice. I DENY the motion to dismiss plaintiffs' remaining claims, including their claim for attorney fees and costs. Finally, I GRANT plaintiffs' motion to strike the Declaration of Kaley F. Fendall.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATIONS ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO STRIKE DECLARATION OF KALEY L. FENDALL

HUBEL, United States Magistrate Judge.

On August 26, 2010, the plaintiffs Jorge Cazarez Garcia and his wife, Miriam M. Marquez, filed a Complaint against the defendants Fannie Mae (the commonly-used nickname for the Federal National Mortgage Association) ("FNMA"), BAC Home Loans Servicing ("BAC"), and Abacus Mortgage, Inc. ("Abacus"), alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), in connection with the plaintiffs' 2007 refinance of their home. Dkt. # 1.

In their Complaint, the plaintiffs allege they refinanced their home with Abacus on August 27, 2007.[1] The plaintiffs claim Ab-

---

1. In paragraph 1 of their Complaint, the plaintiffs allege they refinanced their home on

acus failed to comply with the requirements of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, in connection with the transaction, giving them the right to rescind the transaction within three years after its consummation. Abacus subsequently sold the loan, and the plaintiffs allege the loan currently is owned by FNMA and serviced by BAC. The plaintiffs further claim they notified all of the defendants on August 2, 2010, that they were rescinding the transaction, but the defendants have failed and refused to honor the plaintiffs' right of rescission. *Id.*

The plaintiffs allege Abacus violated the TILA in two specific respects. First, they assert that the "Notice of Right to Cancel" (the "Notice") given to them at the time of the transaction failed to comply with the Act because it omitted the date on which the rescission period expired. Dkt. # 1, ¶ 15 & Ex. A. Second, they claim the Notice violated the TILA in misstating the date of the transaction as August 24, 2007, when the "actual date of the transaction was August 27, 2007." *Id.* The plaintiffs argue these defects in the Notice were material, extending the time within which they could rescind the transaction from three days to three years following consummation of the transaction. *Id.*, ¶ 17 (citing 15 U.S.C. § 1635(f) [2]). They further argue the right of rescission extends to any subsequent assignee of Abacus. *Id.* (citing 15 U.S.C. § 1641(c) [3]).

The plaintiffs claim they tendered a notice of rescission to all three defendants by certified mail on August 2, 2010. Their notice also "explained that plaintiffs had arranged financing to permit them to tender back the principal owing after their rescission of this loan was honored." *Id.*, ¶ 18. According to the plaintiffs, BAC expressly denied their attempted rescission by letter dated August 18, 2010. They further claim that their notice of rescission mailed to Abacus at the address set forth on the Notice was returned as undeliverable. *Id.*, ¶ 19.

The plaintiffs allege the defendants have failed to comply with their obligations under the TILA and its implementing regulations. They assert that they have prequalified to refinance their home at a 4.712% APR, and they will consummate that transaction once the defendants have complied with their obligations under 15

August 27, 2010—obviously a scrivener's error given that the Complaint was filed on August 26, 2010. Exhibit A to the Complaint bears a date of August 24, 2007, as the date of the transaction in question. In paragraph 16 of the plaintiffs' Complaint, they allege the actual date of the transaction was August 27, 2007. For purposes of the present inquiry, the court will assume the correct date of the transaction was August 27, 2007.

2. (f) Time limit for exercise of right

An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except that if (1) any agency empowered to enforce the provisions of this subchapter institutes a proceeding to enforce the provisions of this section within three years after the date of consummation of the transaction, (2) such agency finds a violation of this section, and (3) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later. 15 U.S.C. § 1635(f).

3. "Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." 15 U.S.C. § 1641(c).

U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d)(2) [4]. They seek damages from BAC and FNMA as follows:

A. Return of all finance, interest and other charges paid in connection with this loan, which as of the date of filing this action consists of closing costs and fees of $1,909.85 and interest payments totaling $53,068.75. The total to be refunded as of the date of filing this action is $54,978.00.

B. Statutory damages of $4,000.00 for their failure to comply with their duties upon rescission.

C. Reasonable attorney fees and costs.

Dkt. # 1, ¶ 22. They further seek a "declaratory judgment that they have validly rescinded their loan under TILA and the security interest is terminated." *Id.*, p. 6.

On December 30, 2010, FNMA and BAC jointly filed a Motion to Dismiss, a supporting brief, and a Declaration of Kaley F. Fendall, one of the defendants' attorneys.[5] Dkt. # 16, 17 & 18. The defendants claim the plaintiffs have failed to state a claim upon which relief can be granted. After receiving an extension of time to respond, Dkt. # 22, the plaintiffs filed their response to the motion on January 27, 2011. Dkt. # 23. Concurrently, the plaintiffs filed a motion to strike the declaration of Kaley F. Fendall. Dkt. # 24. After receiving several extensions of time to respond, Dkt. # 27, 30 & 33, the defendants filed a reply in support of their motion to dismiss, Dkt. # 35, and a response to the plaintiffs' motion to strike the Fendall declaration, Dkt. # 36. The plaintiffs notified the court that they will not be filing a reply in support of their motion to strike the declaration. Accordingly, both motions are fully briefed, and the court turns to its review of the defendants' motion to dismiss and the plaintiffs' motion to strike the Fendall declaration.

## STANDARD OF REVIEW

Chief Judge Aiken of this court recently set forth the standard for the court's consideration of a motion to dismiss in *Gambee v. Cornelius*, No. 10–CV–6265–AA, 2011 WL 1311782 (D.Or. Apr. 1, 2011) (Aiken, C.J.). Judge Aiken observed:

4. (b) Return of money or property following rescission When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this sub-section shall apply except when otherwise ordered by a court.

15 U.S.C. § 1635(b).

The cited Regulation Z section provides: "Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest." 12 C.F.R. § 226.23(d)(2).

5. The motion to dismiss was filed only by the defendants FNMA and BAC. The defendant Abacus has not appeared in the case. For purposes of this opinion, the movants will be referred to as the "defendants."

Under Fed.R.Civ.P. 12(b)(6), a complaint is construed in favor of the plaintiff, and its factual allegations are taken as true. *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir.2010). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal* [556 U.S. 662], 129 S.Ct. 1937, 1949 [173 L.Ed.2d 868] (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563[, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929] (2007). "[G]enerally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint." *Daniels–Hall*, 629 F.3d at 998.

*Id.* at *2.

### THE NOTICE OF RIGHT TO CANCEL

The plaintiffs attach to their Complaint unsigned and incomplete copies of the Notice of Right to Cancel which they claim to have received at the time the transaction was consummated. *See* Dkt. # 1, Ex. A. The Notices attached to the plaintiffs' Complaint misstate the transaction date as August 24, 2007 (the transaction actually was consummated on August 27, 2007); do not contain the deadline by which the plaintiffs could exercise their right to cancel; and are not signed by the plaintiffs. *Id.*

Attached to the Fendall declaration are completed copies of the Notice (the "alternative Notices"). Dkt. # 18, Ex. 1, pp. 2 &

3. On the alternative Notices, the date has been corrected to August 27, 2007; the deadline for cancellation has been filled in as August 30, 2007; and both of these dates appear to have been initialed by the plaintiffs. In addition, it appears each of the plaintiffs signed an Acknowledgment of Receipt stating, "Each of the undersigned hereby acknowledges the receipt of two (2) completed copies of this notice of right to cancel." *Id.*

The defendants argue the plaintiffs' signatures on the alternative Notices, whereby the plaintiffs "expressly acknowledg[ed] receipt of two *complete* copies of the [alternative Notice]," obviate their claim that the Notice was defective. Dkt. # 16, p. 4 (emphasis in original). They further assert the plaintiffs are attempting to "take grave advantage of the consumer protection afforded by TILA," arguing the plaintiffs are simply attempting "to take advantage of a more favorable interest rate … after entering into a loan agreement." *Id.*, p. 2.

The plaintiffs move to strike the Fendall declaration, arguing the alternative Notices attached to the declaration have not been authenticated properly, they are evidence outside the pleadings that should not be considered on a motion to dismiss, and even if the court considers the alternative Notices submitted by the defendants, the case still is not appropriate for dismissal.

Because it appears the propriety of the court's consideration of the alternative Notices could be dispositive of both the defendants' motion and, indeed, of the plaintiffs' case, the court will address that issue first.

 The plaintiffs argue the alternative Notices have not been authenticated properly. They claim Ms. Fendall does not have "personal knowledge of the facts" as she claims in paragraph 1 of her declaration. *Id.* Ms. Fendall conceded this at oral

argument. The plaintiffs assert that Ms. Fendall's "conclusory recitation does not satisfy the requirements of F.R.E. 602 that 'evidence [be] introduced sufficient to support a finding that [she] has personal knowledge.'" *Id.*, pp. 4–5.

In support of their argument, the plaintiffs rely on *Blount v. Connecticut General Life Insurance Co.*, No. 01–CV–1341–BR, slip op., 2002 WL 31974405 (D.Or. July 2, 2002) (Brown, J.). In *Blount*, Judge Brown considered a situation almost identical to the present one, in the context of a motion for summary judgment.[6]

 In support of their motion for summary judgment, the *Blount* defendants submitted the affidavit of their attorney with attached exhibits. The plaintiff moved to strike the affidavit because it was not based on the attorney's personal knowledge, and failed to lay a proper foundation for admissibility of the exhibits. The court's discussion of the issue is directly on point in the present inquiry:

> "A writing is not authenticated simply by attaching it to an affidavit...." *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir.1970). In order to lay the foundation for receipt of a document in evidence, the party offering the exhibit must provide the "testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery." *Id.* In other words, the affiant must state specific facts from which the court could infer the affiant could identify correctly the document and knows the attachment is a true and correct copy of the genuine document. *Id.*

Although [the attorney] conclusorily alleges he has personal knowledge as to the authenticity of the documents attached to his affidavits, he provides no factual support. Defendants, nonetheless, argue the Court may infer [his] personal knowledge that the exhibits are authentic from the fact that he is Defendants' attorney of record and is acting as their agent.

An attorney's affidavit is treated like all other affidavits pursuant to Rule 56(e) and is not sufficient unless it is based on personal knowledge. *Postscript Enterprises v. City of Bridgeton*, 905 F.2d 223, 225 (8th Cir.1990). The court, however, may infer an affiant has the requisite personal knowledge and competence to testify by considering the affiant's position or participation in the matters at hand. *See Barthelemy v. Air Line [Lines] Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir.1990). Attorneys generally participate in and, therefore, have personal knowledge of only those matters that occurred during the course of litigation such as when and where a deposition took place. Under most circumstances, an attorney has no personal knowledge of and is not competent to testify to the authenticity of documents generated before the litigation began or merely produced by his client. In other words, an attorney cannot acquire personal knowledge based on hearsay from his client. *See Dibble*, 429 F.2d at 602 (testimony that an affiant works with or for someone who has personal knowledge of the authenticity of a document does not establish the affiant also has the requisite personal knowledge to authenticate it).

**6.** If the court finds the exhibits to the Fendall declaration are properly considered, then the defendants' motion to dismiss must be treated as a motion for summary judgment. Fed. R.Civ.P. 12(d). Accordingly, the court finds that case law considering the propriety of evidence submitted in support of a motion for summary judgment is relevant to the present inquiry.

*Blount,* 2002 WL 31974405 at *3. The court declined to infer that the defendants' attorney could attest to the authenticity of the exhibits attached to his affidavit solely on the basis of his status as defense counsel. *Id.* at *4.

██ "Evidence that is not properly authenticated will not be considered by the court when reviewing a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir.2002)." *Kesey, LLC v. Francis,* No. 06–CV–540–AC, slip op., 2009 WL 909530, at *2 (D.Or. Apr. 3, 2009) (Acosta, M.J.) (noting that "judges in this district have cited *Orr* on numerous occasions and have, for the most part, applied and enforced the authentication requirements set forth therein[,]" and cataloguing cases). The same is true when the court considers evidence outside the pleadings that is submitted in support of a motion to dismiss. *See id.; Anderson v. Angelone,* 86 F.3d 932, 934 (9th Cir.1996) (motion to dismiss must be treated as one for summary judgment if court relies on materials outside the pleadings submitted in support of or opposition to the motion to dismiss); Fed.R.Civ.P. 12(d).

The defendants, however, argue the court should consider the alternative Notices because they were "partially generated by plaintiffs themselves, as [they] contain [ ] plaintiffs' own signatures and acknowledgement." Dkt. # 35, pp. 2–3. They argue the plaintiffs should not be allowed to defeat the motion to dismiss "by deliberately omitting references to documents upon which their claims are based." *Id.* (citing *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998)).

██ "As a general matter, a district court may not consider any material outside of the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001)." *O'Connell–Babcock v. Multnomah County, Oregon,* No. 08–CV–459–AC, slip op., 2009

WL 1139441 at *4 (D.Or. Apr. 24, 2009) (King, J.). However, the Ninth Circuit recognizes an exception to this rule that allows consideration of documents " 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.' *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994)." *Parrino v. FHP, Inc.,* 146 F.3d 699, 705–06 (9th Cir.1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. The Dow Chemical Co.,* 443 F.3d 676, 681 (9th Cir.2006). The purpose of the exception is to "[p]revent[ ] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based[.]" *Parrino,* 146 F.3d at 706 (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993)).

The *Parrino* court held "that a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." *Id.* The court further observed:

FN4. As Parrino notes, where a defendant attaches extrinsic evidence to a Rule 12(b)(6) motion, the court ordinarily must convert that motion into one for summary judgment under rule 56 to give the plaintiff an opportunity to respond. *See Cortec [Indus., Inc. v. Sum Holding L.P.],* 949 F.2d [42,] 48 [ (2d Cir.1991) ]. Where, however, an attached document is integral to the plaintiff's claims and its authenticity is not disputed, the plaintiff "obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished." [*Pension Benefit Guar. Corp. v.*] *White Consolidated Industries,* 998 F.2d [1192,] 1196–97 [ (3d Cir.1993) ].

*Parrino,* 146 F.3d at 706 n. 4; *accord O'Connell–Babcock,* 2009 WL 1139441 at *4.

■ The defendants note that nowhere have the plaintiffs disputed that the alternative Notices contain their signatures, nor do the plaintiffs deny that the dates were inserted at the time they initialed and signed the alternative Notices. Nevertheless, the plaintiff's failure to dispute the authenticity of the alternative Notices does not amount to their admission that the alternative Notices are authentic or that they were provided with complete copies of the alternative Notices at closing. Thus, one of the prerequisites to the court's consideration of the alternative Notices—i.e., that the authenticity of the documents not be contested—is absent here, with the result that the court cannot consider the unauthenticated documents in connection with the defendants' motion to dismiss. *See, e.g., Newsom v. Countrywide Home Loans, Inc.,* 714 F.Supp.2d 1000, 1009 (N.D.Cal.2010) (plaintiffs disputed they received copies of completed forms bearing their signature; court could not resolve the issue on motion to dismiss, holding the determination was "more appropriately made by way of a motion for summary judgment").

Accordingly, the Fendall declaration and its attached exhibits should be stricken.

■ Relying, then, only on the defective Notices attached to the plaintiffs' Complaint, it is clear the plaintiffs have stated a claim upon which relief could be granted. Accepting, for purposes of the defendants' motion to dismiss, that the facts as alleged by the plaintiffs in their Complaint are true, the plaintiff received incomplete Notices at closing, which would form the basis for the plaintiffs' claim that the defendants failed to comply with the TILA disclosure requirements. Therefore, the motion to dismiss should be denied.

However, should the District Judge disagree with my conclusion that the Fendall declaration and exhibits should be stricken, then the court must address the effect of those documents on the defendants' motion to dismiss.

### EFFECT OF SIGNED NOTICES

The defendants argue that the plaintiffs' signatures on the alternative Notices conclusively prove the plaintiffs received complete copies of the alternative Notices, and preclude the plaintiffs' action against not only FNMA, but any assignee of the plaintiff's loan. The plaintiffs disagree. Both parties' arguments are based on various courts' interpretations of two sections of the TILA.

Section 1641, entitled "Liability of assignees," provides in pertinent part as follows:

Except as provided in section 1635(c) of this title, in any action or proceeding by or against any subsequent assignee of the original creditor without knowledge to the contrary by the assignee when he acquires the obligation, written acknowledgement of receipt by a person to whom a statement is required to be given pursuant to this subchapter shall be conclusive proof of the delivery thereof and ... of compliance with this part. This section does not affect the rights of the obligor in any action against the original creditor.

15 U.S.C. § 1641(b).

Section 1635(c), referred to in section 1641(b), entitled "Rebuttable presumption of delivery of required disclosures," provides:

Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section [on

the right of rescission] does no more than create a rebuttable presumption of delivery thereof.

15 U.S.C. § 1635(c).

The defendants argue the "rebuttable presumption" standard found in section 1635(c) only applies to original creditors, not to subsequent assignees. They maintain the "conclusive proof" standard of section 1641(b) should be applied to subsequent assignees of the original creditor when the borrower signed an acknowledgement of receipt of the required disclosures. Dkt. # 17, pp. 6–9 & n. 2.

The plaintiffs disagree, based on a plain reading of the statutes and because they argue it would be inappropriate to apply the presumption standard on a motion to dismiss. Dkt. # 23, pp. 10–11. In support of this second argument, the plaintiffs rely on *Morris v. Bank of America*, No. C09–2849–SBA, slip op., 2010 WL 761318 (N.D.Cal. Mar. 3, 2010). In *Morris*, the court was faced with facts nearly identical to those the court faces here. The plaintiffs alleged they had not received copies of the rescission notice as required by the TILA. The defendants (which included FNMA and BAC) filed a motion to dismiss, attaching what purported to be copies of the rescission notices bearing both of the plaintiffs' signatures. The defendants urged the court to apply the rebuttable presumption under section 1635(c). The court held as follows:

> Even if it were proper to take judicial notice of the copies of the notices proffered by Defendants, application of the rebuttable presumption under 15 U.S.C. § 1635(c) is inappropriate at this stage of the proceedings. By definition, a rebuttal [sic] presumption involves consideration of *evidence* to determine whether the presumption has been rebutted. *See Glucksman v. First Franklin Finan. Corp.*, 601 F.Supp.2d 511, 514 (E.D.N.Y.2009) (declining to apply 15

U.S.C. § 1635(c) on a motion to dismiss because it requires the consideration of evidence). The Court cannot consider evidence on a motion to dismiss unless it converts the motion to one for summary judgment under rule 56, which the Court declines to do. *See* Fed.R.Civ.P. 12(d); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001). While the presumption under section 1635(c) may ultimately prove dispositive of Plaintiffs' TILA claim, that determination cannot be made on a motion to dismiss. *See* 5 B.C. Wright & A. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2006)[ ] ("[C]ourts have refused to consider presumptions in favor of the defendant on a motion to dismiss since presumptions are evidentiary standards that are inappropriate for evaluation at the pleadings stage.").

*Morris*, 2010 WL 761318 *4.

■ In the present case, both the plaintiffs and the defendants recognize that courts across the country conflict in their interpretations of whether or not to apply the "rebuttable presumption" standard or the "conclusive proof" standard to rescission claims brought against an assignee. Cases cited by the defendants in support of their position include *Chernik v. Bank of America Home Loans*, No. 2:09–cv–02746, slip op., 2010 WL 3269797, at *2 (E.D.Cal. Aug. 18, 2010) (on motion to dismiss, applying "rebuttable presumption" standard to defeat plaintiffs' TILA claim against mortgage assignee); *Hughes v. Equity Plus Financial*, No. 09cv2927, slip op., 2010 WL 2836828, at **6–7 (S.D.Cal. Jul. 19, 2010) (on motion to dismiss, court held attempted rescission was precluded where plaintiff signed acknowledgement of receipt of Notice of Right to Cancel and did not challenge the document's authenticity); *Johnston v. Lindaur*, No. 2:07–cv–1280, slip op., 2010 WL

147939, at *3 (E.D.Cal. Jan. 12, 2010) (on summary judgment, court can infer from plaintiff's signature on notice that he received the notice; relying on *Lynch v. RKS Mortg. Inc.*, 588 F.Supp.2d 1254, 1258 (E.D.Cal.2008) for the proposition that "written acknowledgment is conclusive proof of delivery"); *Balderas v. Countrywide Bank, N.A.*, No. 09cv564, 2009 WL 4783142, at *4 (S.D.Cal. Dec. 10, 2009) (on motion to dismiss, court held plaintiffs' possession of incomplete notices of right to cancel failed to rebut the presumption raised by signed acknowledgments of receipt proffered by defendant; relying on *Garza, infra* ); *Anderson v. Countrywide Financial*, No. 2:08–cv–01220, 2009 WL 3368444, at *3 (E.D.Cal. Oct. 16, 2009) (same); *Garza v. American Home Mortgage*, no. CV F 08–1477, 2009 WL 1139594, at *3 (E.D.Cal. Apr. 28, 2009) (on motion to dismiss, plaintiff's signature on acknowledgement of receipt of notice, and failure to dispute the document's authenticity, constituted "prima facie proof of delivery"); *Quintos v. Decision One Mortgage Co., LLC*, No. 08–CV01757, 2008 WL 5411636, at *3 (S.D.Cal. Dec. 29, 2008) (on motion to dismiss, applying "rebuttable presumption" standard to deny plaintiff's TILA claim against original lender); *Henderson v. GMAC Mortgage Corp.*, No. C05–5781RBL, 2008 WL 1733265, at *6 (W.D.Wash. Apr. 10, 2008) (on summary judgment, applying "conclusive proof" standard to plaintiffs' TILA claim against

assignee of mortgage). Dkt. # 17, pp. 7–9; Dkt. # 35, pp. 5–7.[7]

Besides *Morris*, discussed above, cases cited by the plaintiffs in support of their position include *Newsom v. Countrywide Home Loans, Inc.*, 714 F.Supp.2d 1000, 1009 (N.D.Cal.2010) (where plaintiffs disputed they received complete copies of notices allegedly bearing their signatures, court could not consider documents on motion to dismiss) (citing *Olivera v. American Home Mortg. Serv., Inc.*, 689 F.Supp.2d 1218, 1222 (N.D.Cal.2010); *Woods v. Greenpoint Mortg. Funding, Inc.*, 2010 WL 1729711, at *2 (E.D.Cal. Apr. 28, 2010); *Burch v. GMAC Mortg., LLC*, 2010 WL 934088, at *2 (N.D.Cal. Mar.15, 2010)); *Botelho v. U.S. Bank, N.A.*, 692 F.Supp.2d 1174, 1177–78 (N.D.Cal.2010) (same); *Pearce v. Bank of America Home Loans*, No. C 09–3988, 2010 WL 689798 at *3 (N.D.Cal. Feb. 23, 2010) (same; noting that even if document were properly considered, written acknowledgement would do no more than create a rebuttable presumption of delivery, and "written acknowledgment of the disclosure does not require dismissal of the claim"); *Gifford v. Bank of America*, No. 09–CV–639, slip op., 2010 WL 3199946, at *5 (D.Or. Jul. 9, 2010) (Papak, M.J.) ("plaintiffs may rescind against an assignee to the full extent they could against an original creditor") (citing *Rowland v. Novus Fin. Corp.*, 949 F.Supp. 1447, 1458–59 (D.Haw.1996)), *adopted*, 2010 WL 3219537 (D.Or. Aug. 10, 2010) (King, J.); *Delaney*

---

**7.** The defendants also cite *McCarthy v. Option One Mortgage Corp.*, 362 F.3d 1008, 1011–12 (7th Cir.2004), for the proposition that "mere assertion of non-receipt is insufficient to rebut written evidence that disclosures were provided." Dkt. # 35, p. 6. In a case alleging failure to make disclosures required by Illinois law, the *McCarthy* court held that "evidence of regular office procedures and customary practices of a sender gives rise to a presumption of delivery and this Court has rejected

the notion that this type of evidence may be rebutted by a mere denial of receipt." *McCarthy*, 362 F.3d at 1012.

In addition, the defendants cite *Gaona v. Town & Country Credit*, 324 F.3d 1050, 1054 (8th Cir.2003), for the proposition that "mere allegations that disclosures were not provided are insufficient to rebut presumption of delivery." Dkt. # 35, p. 6. The *Gaona* court made no such finding, and the case is irrelevant to the present motion.

*v. Aurora Loan Servicing, Inc.*, No. C09–3131, slip op., 2009 WL 5062339, at *2 (N.D.Cal. Dec. 23, 2009) (on motion to dismiss, declining to take judicial notice of documents allegedly signed by plaintiff); *Jenkins v. Landmark Mortgage Corporation of Virginia*, 696 F.Supp. 1089, 1093 (W.D.Va.1988) ("Acknowledgement of receipt of the TILA disclosure statement creates only a rebuttable presumption of delivery[.]"). Dkt. # 23, pp. 7, 10–11.

The plaintiffs argue cases cited by the defendant are distinguishable. They note that in *Balderas*, the notices considered by the court were attached to the plaintiff's complaint, not the defendant's motion. They assert that *Henderson* and *Johnston* "do apply the conclusive proof standard, but neither case addresses § 1641(b)'s exemption of § 1635(c)." Dkt. # 10, p. 10 n. 2. They further assert that Hughes "cites no law in support of its holding." *Id.*

As the defendants acknowledge, the undersigned recently considered a motion to dismiss in a case similar to the one at issue here. In *Bakker v. Wells Fargo Home Mortgage*, No. CV–10–82, slip op., 2011 WL 1124041 (D.Or. Feb. 28, 2011), I declined to consider versions of a notice of right to cancel submitted by the defendants with their motion to dismiss, noting that the standard for deciding a motion to dismiss requires less of a plaintiff than the standard for deciding a motion for summary judgment. I further held that the signed notices proffered by the defendants did "not create a presumption the plaintiff must rebut." *Id.*, 2011 WL 1124041, at *7. The defendants here argue that *Bakker* is distinguishable because in *Bakker*, the borrower had only acknowledged receiving two copies of the notice, not "completed" copies, while in the present case, the signed acknowledgment proffered by the defendants indicates the plaintiffs received "complete" copies of the notice. Dkt. # 35, pp. 7–8. The defendants' argument

misses the point. While it may be possible (thought not conclusively so) that the notices proffered by the defendants could defeat the plaintiffs' case on summary judgment, at the stage of a motion to dismiss, I find the plaintiffs' allegation that they received incomplete notices of their right to cancel is sufficient to state a claim. I therefore recommend the defendants' motion to dismiss the plaintiff's claim for violation of the TILA be denied.

### STATUTORY DAMAGES AND ATTORNEYS' FEES

██ The defendants argue the plaintiffs "have failed to state a claim for statutory damages and attorneys' fees for the additional reason that the imposition of statutory damages and attorneys' fees upon assignees is improper where the TILA violation is not evident on the face of the loan documents." Dkt. # 17, p. 10. The defendants assert that only the original creditor can be held liable for a monetary penalty or an award of attorney's fees. *Id.* (citing 12 C.F.R. § 226.2(a)(17); 15 U.S.C. § 1640(a)). The defendants rely on 15 U.S.C. § 1641(a), which provides as follows:

> Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter ... which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure

which does not use the terms required to be used by this subchapter.

The defendants argue section 1641(a) limits assignee liability "[b]ecause 'Congress did not wish to impose liability for damages and attorneys' fees on an assignee who was not responsible for and who has no notice of TILA disclosure violations at the time of assignment[.]'" Dkt. # 17, p. 10 (quoting *Bushong v. Paramount Equity Mortgage, Inc.,* No. 09–1080–AC, slip op., 2010 WL 3945256 (D.Or. Oct. 6, 2010) (Haggerty, J.)). In support of their argument, the defendants rely on *Russell v. Mortgage Solutions Management, Inc.,* No. CV 08–1092–PK, slip op., 2010 WL 3945117, at **8–9 (D.Or. Apr. 6, 2010) (Papak, M.J.) (holding "statutory damages and attorney fees are not available under TILA against assignees except where the underlying TILA violation was facially discernable from the disclosure statement containing the violation"; expressly disagreeing with the opposite conclusion reached by the court in *Fairbanks Capital Corp. v. Jenkins,* 225 F.Supp.2d 910 (N.D.Ill.2002)) (citations omitted); *Brunat v. Indymac Federal Bank,* No. CV–09–1796, slip op., 2010 WL 2197545, at *1 (D.Ariz. May 26, 2010) (reaching same conclusion); *Fullmer v. JPMorgan Chase Bank, N.A.,* No. 2:09–cv–1037, 2010 WL 95206, at *3 (E.D.Cal. Jan. 6, 2010) (same); *Kane v. Equity One, Inc.,* No. 03–3931, 2003 WL 22939377, at *4, 6 (E.D.Pa. Nov. 21, 2003) (same).

The plaintiffs contend the decisions in *Bushong* and *Russell,* upon which the defendants heavily rely, ignore the introductory language of section 1641(a), which limits assignee liability "[e]xcept as otherwise specifically provided in this subchapter." The plaintiffs rely on *Fairbanks Capital Corp. v. Jenkins,* 225 F.Supp.2d 910 (N.D.Ill.2002), a case with which my colleagues, Judges Papak, Acosta, and Haggerty, have expressly disagreed. In *Fairbanks,* the court held that "attorney's fees, at least, are available from an assignee, and not just from the originating creditor, for violating a consumer's right to rescind." *Id.,* 225 F.Supp.2d at 916–17. In so holding, the court construed section 1640(a) of the TILA, which provides:

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, ... with respect to any person is liable to such person in an amount equal to the sum of—

. . .

(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 or 1638(e)(7) of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court[.] . . .

The *Fairbanks* court explained its interpretation of section 1640(a) as follows:

Section 1640(a)(3) provides that "in the case of any successful action to enforce the foregoing liability *or in any action in which a person is determined to have a right of rescission under section 1635 of this title,* the costs of the action, together with a reasonable attorney's fee as determined by the court" is available. 15 U.S.C. § 1640(a)(3) (emphasis added). Congress' [s] use of the disjunctive indicates that liability for attorney's fees, at least, is not limited to actions against the creditor that initiated the loan but rather applies in "any action" in which a right to rescind is determined to exist.

[Section] 1641(e)(1) and its counterpart § 1641(a) plainly are not the exclusive means of imposing TILA liability on assignees. Both provisions state that a

civil action may be brought against an assignee only for violations apparent from the disclosure statement "[e]xcept as otherwise specifically provided in this subchapter." 15 U.S.C. § 1641(a) & (e)(1). But § 1641(c) is such an exception: it specifically provides that a customer has the right to rescind against "*any* assignee of the obligation," *Id.* § 1641(c) (emphasis added), and not just against the more limited set of assignees described in § 1641(a) and (e)(1).

Finally, denying a consumer whose demand for rescission was refused by an assignee the ability to recover attorney's fees upon successful court action to enforce her TILA rights would undermine the policies underlying the TILA and its private enforcement mechanism. The TILA provides for an award of attorney's fees to a successful consumer in order to ensure that the consumer is made whole and to encourage enforcement of the statute's requirements. *Hannon v. Security National Bank*, 537 F.2d 327, 328 (9th Cir.1976); *Corbett v. Keene Co–Operative Bank*, 498 F.Supp. 800, 802 (D.N.H.1980); *Liberty Loan Corp. v. Boyajian*, 407 F.Supp. 308, 311 (D.R.I.1976); *Jones v. Seldon's Furniture Warehouse, Inc.*, 357 F.Supp. 886, 887 (E.D.Va.1973). If consumers were precluded from recovering attorney's fees in this context, they would be chilled from seeking enforcement even in meritorious cases, as it is common for TILA plaintiffs to be persons of limited means who are unable to finance expensive litigation.

In sum, this Court ... concludes that an assignee that refuses to honor a proper demand for rescission may in fact be held liable under the TILA for attorney's fees.

*Fairbanks*, 225 F.Supp.2d at 917.

In *Russell*, Judge Papak found that "[a]lthough the *Fairbanks* court's reason-ing appears plausible at first blush, analysis of the statutory language at issue indicates that *Fairbanks* was wrongly decided." 2010 WL 3945117, at *8. Judge Papak analyzed the applicable statutory scheme in detail and concluded that the *Fairbanks* court had "incorrectly characterized" and construed the statutes. *Id.* Although he agreed that the policy interests underlying the TILA "would be well served by permitting rescission plaintiffs to seek attorney fees against assignees," he disagreed that a failure to do so would undermine those policy interests or discourage consumers from enforcing their right to rescission. *Id.*, 2010 WL 3945117, at *9. He concluded that "[w]hile assignee liability for attorney fees and statutory damages is contemplated, *see* Section 1641(e)(1), such liability is expressly conditioned on the facial discernability of the underlying TILA violation, see Section 1641(e)." *Id.*

In *Bushong v. Paramount Equity Mortgage, Inc.*, No. CV 09–1080, slip op., 2010 WL 3945410 (D.Or. May 24, 2010), Judge Acosta noted that this issue has not been addressed by the Ninth Circuit Court of Appeals, and other courts have reached varying conclusions. He found more persuasive the court's analysis in *Brodo v. Bankers Trust Co.*, 847 F.Supp. 353, 359 (E.D.Pa.1994). Judge Acosta explained the *Brodo* court's holding as follows:

> [I]n *Brodo v. Bankers Trust Co.*, 847 F.Supp. 353, 359 (E.D.Pa.1994), [footnote omitted], the court stated that section 1641(a) limits assignee liability to violations that are apparent on the face of the disclosure statement because "Congress did not wish to impose liability for damages and attorney's fees on an assignee who was not responsible for and who has no notice of TILA disclosure violations at the time of an assignment." *Id.* 359. In *Brodo*, there were no TILA violations apparent on the face

of the disclosure statement. *Id.* The plaintiff argued that the assignee was nevertheless liable for refusing to respond to a valid rescission notice. *Id.* The court concluded that "[w]hile § 1641(c) provides that the right to rescind exists even against a creditor's assignee, § 1640(a) permits only a 'creditor' to be held liable for a monetary penalty or an award of attorney's fees for a TILA violation[.]" *Id.* Moreover, *Brodo* found that neither section 1641 nor any other section provides for a statutory penalty or an award of attorney's fees to a plaintiff should an assignee fail to respond to a valid rescission notice. *Id.* Accordingly, rescission was deemed the only remedy in such a situation. *Id.*

This court agrees with the *Brodo* approach that Congress chose not to impose liability for damages and attorney's fees on an assignee who was not responsible for or on notice that disclosure violations existed at the time of an assignment. Legislative history confirms that Congress enacted sections 1641(a) and (e) to narrow assignee liability. *Taylor v. Quality Hyundai, Inc.,* 150 F.3d 689, 693 (7th Cir.1998) (*citing* H.R. Conf. Rep. No. 96–842, at 80–81 (1980)). This court also agrees with Brodo "that neither section 1641 nor any other section provides for a statutory penalty or an award of attorney's fees to a plaintiff should an assignee fail to respond to a valid rescission notice."

*Bushong,* 2010 WL 3945410, at **7–8.

Judge Acosta expressly disagreed with the *Fairbanks* court's statutory interpretation, observing:

> Section 1640(a) clearly makes reference only to creditors. Had Congress intended section 1640(a)'s remedies to apply to assignees, as the court in *Fairbanks Capital* concluded, then Congress would have made express reference to assign-

ees as well. Rather, the court in *Walker v. Gateway Fin. Corp.,* 286 F.Supp.2d 965 (N.D.Ill.2003), made the pertinent observation that imposing on assignees the damages which the statute imposes on creditors "would create an impermissible end run around the obvious congressional purpose that underlies the Section (a) enactment of a statutory equivalent to a bona fide purchaser rule," *Walker,* 286 F.Supp.2d at 969 (disagreeing with "respected colleague" in same district who authored *Fairbanks Capital* decision).

> Finally, it logically follows that creditors would be subject to greater potential liability than assignees because they are closely involved in the initial transaction with the debtor.

*Id.,* at *8.

Adopting Judge Acosta's recommendation, Judge Haggerty of this court observed, "The Senate Report cited in *Taylor* clarifies that assignees are liable only where a disclosure is inaccurate or incomplete based on the statement or other documents involved, and where incorrect terminology is used on the face of the disclosure statement." 2010 WL 3945256, at *5 (citing S.Rep. No. 96–368 at 32–33, 1980 U.S.C.C.A.N. 236, 238 (1980)). Judge Haggerty also noted that this conclusion is "consistent with a number of well-reasoned decisions throughout the country." *Id.* (citing 2010 decisions from the Districts of Kansas, Pennsylvania, Michigan, and Virginia).

The plaintiffs in the present case maintain that the passage of the congressional history upon which Judge Haggerty, and the *Taylor* court, relied does not stand for the proposition "'that assignees are liable only' for facial violations." Dkt. # 23, p. 14 (quoting *Bushong,* 2010 WL 3945256, at *5). The plaintiffs insist:

Instead, [the passage to which Judge Haggerty cites] explains that the amendments "stat[e] explicitly that a consumer's exercise of [rescission] is effective against an assignee. Without such protection for the consumer, the right of rescission would provide little or no effective remedy." S.Rep. No. 96–368 at 32–33, *reprinted in* 1980 U.S.C.C.A.N. 236, 238.

*Id.* The plaintiffs misunderstand Judge Haggerty's ruling. None of my distinguished colleagues has held that a consumer may not rescind as against an assignee; rather, they have held that even when rescission is available, the consumer may not recover attorneys' fees from an assignee.

The 1979 amendments to the Truth in Lending Act were intended, among other things, to "limit[ ] creditor civil liability for statutory penalties to only significant violations," S.Rep. No. 96–368 (1980), *reprinted in* 1980 U.S.C.C.A.N. 236, at 253. With regard to rescission, the legislative history described the amendments to the TILA as follows:

> Section 512. Rescission.—This section contains several amendments regarding the consumer's right of rescission. Under current law, when a transaction would result in a lien on a consumer's home, the consumer is entitled to rescind the transaction within 3 days after receiving notice of his right to do so. This provision was enacted to give the consumer the opportunity to reconsider any transaction which would have the serious consequence of encumbering the title to his home. . . .
>
> . . .
>
> Section 515. Civil Liability.—This section is intended to restrict the scope of creditor civil liability for statutory penalties to only those disclosures which are of material importance in credit shopping. The Committee believes this will eliminate litigation based on purely technical violations of the Act. Civil liability for actual damages and administrative liability would continue to attach to all the Act's requirements.
>
> . . .
>
> The bill also makes explicit that a consumer may institute suit under Section 130 [i.e., 15 U.S.C. § 1640] to enforce the right of rescission and recover costs and attorney's fees in a successful action.
>
> . . .
>
> Section 516. Liability of Assignees.—This section eliminates two uncertainties under present law as to an assignee's liability for an original creditor's violation of the Act.
>
> Under present law, an assignee is generally liable only where a violation is 'apparent on the face' of the disclosure statement. What types of violations are covered is unclear. This section provides that violations are apparent on the face of a disclosure statement when disclosures are inaccurate or incomplete based on the statement or other documents involved, and where incorrect terminology is utilized.
>
> In addition, this section eliminates ambiguity on the question of assignee liability for rescission by stating explicitly that a consumer's exercise of this right is effective against an assignee. Without such protection for the consumer, the right of rescission would provide little or no effective remedy.

*Id.*, 1980 U.S.C.C.A.N. at 264, 268.

 The statutory scheme makes it clear that a consumer may sue an assignee to enforce the right of rescission. It also is clear that when an assignee accepts the assignment of a loan containing a disclosure violation that is clear on the face of the applicable document, the assignee also is accepting liability for statutory damages,

attorneys' fees, and costs associated with any action based on that violation. The apparent reason for passing on liability for those types of damages to the assignee is that the assignee made the decision to accept the assignment in spite of the clear disclosure violation.

■ Carried to a logical conclusion, then, it also would seem both appropriate, and clear from the statutory scheme, that an assignee who makes the decision regarding whether or not to honor a consumer's rescission notice also should be liable for the attorneys' fees and costs associated with the consumer's successful action to enforce the rescission. The original creditor, in such a case, has no further right to take any action with regard to the loan. As Judge Papak recently observed in *Dexter v. Homecoming Financial, L.L.C.,* No. CV 09–493–PK, Dkt. # 70, at pp. 24–26, when a consumer seeks rescission of a loan that has been assigned by the original lender to another holder, "the court obviously cannot require the original lender to terminate a security interest that it no longer possesses," nor can the original lender grant rescission or cancel the loan. *Id.* (citing *Zakarian v. Option One Mortg. Corp.,* 642 F.Supp.2d 1206 (D.Haw.2009); *James v. Bridge Capital Corp.,* No. 08–CV–397–BR, 2011 WL 309692, at *10 (D.Or. Jan. 25, 2011)). It is the assignee that may be required to cancel the loan or refund money to the borrower.

Notwithstanding other courts' interpretations, I find that a common sense reading of the legislative history as a whole, together with the statutory language, results in the conclusion that (1) a consumer may bring a civil action against an assignee for rescission; (2) in a successful rescission action, the consumer is entitled to recover attorneys' fees and costs; but (3)

statutory damages are available against an assignee only when disclosure violations are apparent on the face of the applicable document. Accordingly, I recommend that the defendants' motion to dismiss be granted as to the plaintiffs' claim for statutory damages, but denied as to their claim for attorneys' fees and costs.

### BAC'S STATUS AS A PARTY DEFENDANT

The defendants argue BAC is an improper party defendant because as "a mere servicer of plaintiffs' loan, BAC cannot be held liable for rescission or statutory damages claims brought under TILA." Dkt. # 17, p. 2. The plaintiffs "do not oppose dismissing BAC," but request that BAC be dismissed without prejudice so that if FNMA establishes it is not the current assignee of the loan, then the plaintiffs could reassert their "claim against BAC under the final sentence of 15 U.S.C. § 1641(f)(2)."[8] Dkt. # 23, p. 3.

The undersigned recommends BAC be dismissed without prejudice.

### CONCLUSION

For the reasons set forth above, the plaintiffs' motion to strike the Fendall declaration is **granted.**

Further, the undersigned respectfully recommends that the defendants' motion to dismiss be denied.

These Findings and Recommendation will be referred to a district judge. Objections, if any, are due by **May 31, 2011.** If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then any response is due by **June 16, 2011.** By the earlier of the response due date or

---

8. "... Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." 15 U.S.C. § 1641(f)(2).

the date a response is filed, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 10th day of May 11, 2011.